REGINALD S. HAMEL, ANCILLARY ADMINISTRATOR OF THE ESTATE OF WILLIAM THOMAS McDOWELL, JR. v. YOUNG SPRING & WIRE CORPORATION, A MICHIGAN CORPORATION, PAUL HARDEMAN, INC., A CORPORATION, DAYBROOK-OTTAWA CORPORATION, AND TWIN-STATES TRUCK EQUIPMENT COMPANY, A CORPORATION

No. 7126SC363

(Filed 18 August 1971)

1. Sales §§ 18, 22— implied warranty of fitness — negligent manufacture — purchaser's negligence in maintaining equipment — anticipation by manufacturer

   In this action for wrongful death based upon alleged breach of implied warranty of fitness and negligent construction of equipment sold to decedent's employer by defendants, the trial court did not err in instructing the jury that defendants were not required to anticipate negligence on the part of decedent's employer in maintaining and servicing the equipment.

2. Sales § 23— inherently dangerous machine — duty of manufacturer — instructions

   The trial court did not err in instructing the jury that the manufacturer of a machine which is dangerous because of the way it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and defects which are concealed dangers.

3. Evidence § 48— opinion testimony — failure to qualify witness as expert

   In an action for wrongful death based upon alleged breach of warranty of fitness and negligent construction of equipment sold to decedent's employer by defendants, the trial court did not err in the exclusion of opinion testimony by employees of decedent's employer as to the safeness of the equipment, where none of the witnesses had been tendered or qualified as an expert.

**4. Evidence § 48— competency of witness as expert — discretion of court**

The competency of a witness to testify as an expert is addressed to the sound discretion of the trial judge, and his discretion is ordinarily conclusive.

**5. Rules of Civil Procedure § 50— motion for directed verdict — ruling withheld until after jury verdict**

Procedure whereby the trial judge withheld his ruling on a motion for a directed verdict until after the jury had returned its verdict is disapproved; after a case has been submitted to the jury, the proper motion to be ruled upon is a motion for judgment notwithstanding the verdict under Rule 50.

BOTH the plaintiff and defendant Twin-States Truck Equipment Company appealed from *Martin, (Harry C.) Judge,* 19 October 1970 Session of MECKLENBURG County Superior Court.

Plaintiff, as Ancillary Administrator of the Estate of William Thomas McDowell, Jr., (McDowell) instituted this action for wrongful death of McDowell. The pleadings, admissions and evidence establish the following facts. McDowell died 9 October 1965 as the result of injuries sustained 7 October 1965. At the time of the injuries, McDowell was an employee of Duke Power Company (Duke) in Spartanburg, South Carolina. He and a fellow employee were working at the time from a bucket which was attached to a boom on a truck. The boom and bucket were raised by a hydraulic lift and was used to work on high-tension lines at a considerable distance above the ground. The piece of equipment was known as a Strata-Tower. The Strata-Tower was manufactured by Young Spring & Wire Corporation, (Young) prior to the Summer of 1961. In the Summer of 1961 Duke purchased the Strata-Tower through the North Carolina distributor of Young, the defendant Twin-States Truck Equipment Company (Twin-States). Young had actively participated with Twin-States in negotiating the sale as this type of equipment was specialty equipment and made only on special orders.

Duke delivered its truck chassis to Young in Bowling Green, Ohio, where the Strata-Tower was mounted on the chassis; and then the truck with the Strata-Tower was sent to Cleveland, Ohio, where a special utility body was fitted to the truck. Thereafter, the truck, fully equipped, was brought back to Charlotte, North Carolina, and delivered by Twin-States to Duke in November 1961. Duke caused this equipment to then be taken to Spartanburg, South Carolina, and it was in that

locality that the equipment was placed in use and where it stayed in use from that time until after the injuries in question on 7 October 1965.

Sometime after the manufacture of this Strata-Tower, Young merged with Paul Hardeman, Inc.; and Young was the surviving corporation but changed its name to Paul Hardeman, Inc. In the Spring of 1965 Paul Hardeman, Inc., caused Daybrook-Ottawa Corporation, (Daybrook) to be formed as a wholly-owned subsidiary of Hardeman. Hardeman conveyed to Daybrook a portion of Hardeman's business, including the manufacturing facilities in Bowling Green, Ohio, where the Strata-Tower was manufactured. In turn, Daybrook assumed all liabilities of this particular division of Hardeman. This was on 14 June 1965 preceding the fatal injuries to McDowell of 7 October 1965.

The bucket of the Strata-Tower was attached to the end of a boom. The boom consisted of two sections. The end of one section was attached to the bucket and then there was an elbow attaching that section of the boom to the second portion of the boom, and in turn the second portion of the boom was fixed to the chassis of the truck. At the elbow of the two portions of the two sections of the boom, there were pulleys. The bucket was stabilized and kept level for a platform for the men to work from by means of two wire cables. These cables went over the pulleys in the elbow of the two sections of the boom. The equipment was so designed that when the bucket was raised to its full height of some 45 feet, the wire cables would move across the pulleys at the elbow for a distance of 19½ inches. The wire cables themselves were not continuous but were interrupted by having inserted a piece of fiber glass. This piece of fiber glass at each end had a metal piece to which the cable was attached. The purpose of the fiber glass insert was to serve as insulation on the Strata-Towers being used for high-tension electrical work. Both the cables and the fiber glass insert were enclosed in the covering of the boom and could be seen only at the elbow when the boom was in an extended position.

McDowell sustained his fatal injuries on 7 October 1965 when he and his fellow employee were in the process of descending in the Strata-Tower bucket from working on overhead high-tension lines. The bucket had reached a point some twelve feet above the street surface on its descent when, with a loud noise,

the bucket turned over spilling the two men onto the hard surface of the street. Inspection thereafter revealed that one of the two cables designed to keep the bucket level had frayed and separated. The other cable had broken in a clean break. The pulley over which the frayed cable had run had a broken flange on one side which enabled the cable to slide off the pulley and down to the hub of the pulley.

Plaintiff sought to recover on two alternative causes of action, the first being implied warranty that the Strata-Tower was sound, fit, suitable and safe for use in raising employees a considerable distance off the ground. Plaintiff alleged that this implied warranty was breached in that both the design and construction of the Strata-Tower was such that it was inherently dangerous and that it was sold without informing Duke of the hidden dangers and that this Strata-Tower was not fit, suitable and safe for its intended use.

In the second cause of action plaintiff alleged that the Strata-Tower was negligently constructed, was inherently dangerous and did not have proper safety devices; that improper instructions for maintenance had been given and that both the original parts and replacement parts were defective and improper.

Plaintiff offered expert testimony as to the improper design of the equipment, improper materials, and that at least one wire cable was permitted to fray out due to the broken pulley flange; that the broken pulley flange was caused by the metal end of the fiber glass insulator coming in contact with it at the elbow and that one cable having broken, the strain was too much on the other cable causing it to snap; that there were inadequate safety devices to prevent the bucket from tipping over when the cables broke; and in general that the Strata-Tower was a dangerous instrumentality which danger could not be detected by the average employee using the equipment.

At the close of plaintiff's evidence the trial judge granted the motion of Twin-States for a directed verdict against the plaintiff on the issue of negligence but denied it on the issue of implied warranty.

The defendants' evidence was to the effect that the equipment had not been properly maintained; that the equipment

came with 6-inch pulleys, and 4-inch pulleys had been substituted in lieu thereof; that if properly maintained, the equipment was safe and adequate for the purpose for which designed.

At the close of all the evidence, a directed verdict was given in favor of Twin-States as against the other defendants, except Daybrook, on the issue of indemnity on the implied warranty.

The motion of Daybrook for a directed verdict in its favor was held in abeyance by the trial judge until after the jury verdict.

The case was submitted to the jury and the verdict was returned finding no breach of implied warranty and on another issue finding no negligence.

From a judgment that plaintiff recover nothing of the defendants, the plaintiff appealed. Twin-States likewise appealed from the refusal of the trial judge to sustain its motion for a directed verdict against Daybrook on the issue of indemnity on the implied warranty.

*Claude R. Dunbar; Hunter M. Jones for plaintiff appellant.*

*Carpenter, Golding, Crews & Meekins by John G. Golding and Michael K. Gordon for defendant appellant-appellee, Twin States Truck Equipment Company.*

*John H. Small; R. C. Carmichael, Jr., for defendant appellees, Young Spring & Wire Corporation, Paul Hardeman, Inc., and Daybrook-Ottawa Corporation.*

CAMPBELL, Judge.

[1] Plaintiff assigns as error that portion of the charge to the jury that defendants were not required to anticipate negligence on the part of Duke in maintaining and servicing the Strata-Tower. We are of the opinion that this portion of the charge was proper and correct. To hold that defendants had to anticipate negligence on the part of Duke in maintaining the Strata-Tower would impose an improper burden. In effect, it would mean that manufacturers would have a duty to oversee the maintenance and servicing of all equipment manufactured and sold by them, wherever situated; otherwise, they might be held liable for injuries resulting through no defect in the manufac-

---

Hamel v. Wire Corp.

---

ture of the equipment but through the negligence of a third party in the maintenance of the equipment. Generally, " 'one is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act upon the assumption that others will exercise care for their own safety.' " *Hawes v. Refining Co.*, 236 N.C. 643, 74 S.E. 2d 17 (1953).

Negligence by a third party in maintaining or servicing equipment is to be distinguished from negligence by a third party in failing to discover a negligently manufactured part. In the latter case, the negligence of the third party in failing to discover the defect does not intervene and supersede the original negligence of the manufacturer. *Gwyn v. Motors, Inc.*, 252 N.C. 123, 113 S.E. 2d 302 (1960). .But that is not the situation here in reference to that portion of the charge complained of. " . . . A manufacturer does not warrant that his product is incapable of deteriorating into a dangerous state if *mishandled* or kept too long before being used. . . . " (Emphasis added) *Terry v. Bottling Co.*, 263 N.C. 1, 138 S.E. 2d 753 (1964), concurring opinion by Sharp, J.

**[2]** Plaintiff also contends that the trial judge erred in charging the jury as to the duty of the manufacturer. That portion of the charge was as follows:

"Members of the jury, I instruct you that the manufacturer of a machine which is dangerous because of the way in which it functions and patently so, owes to those who use it a duty merely to make it free from latent defects or defects which are concealed danger. So in a case such as this the plaintiff must prove the existence of a latent defect or a danger not known to the plaintiff or other users of the Strata-tower in question."

The North Carolina Supreme Court approved of the same language used in the charge above in the case of *Kientz v. Carlton*, 245 N.C. 236, 96 S.E. 2d 14 (1957). No error is found to appear.

Plaintiff makes other assignments of error to the charge. We have considered each of these assignments of error and find that the charge, considered in its entirety, was fair and free from prejudicial error.

**[3, 4]** Plaintiff also assigns as error the exclusion of testimony by employees of Duke as to the safeness of the Strata-Tower. Such testimony calls for the opinion of the witnesses, yet none of the witnesses had been tendered or qualified as an expert. When an objection to such testimony is made, the proper procedure is for the party offering the witness as an expert to request a finding of his qualification; absent such a request and absent a finding or admission that the witness is qualified, the exclusion of his testimony will not be reviewed on appeal. *Highway Commission v. Matthis,* 2 N.C. App. 233, 163 S.E. 2d 35 (1968); Stansbury, N. C. Evidence 2d, § 133. The competency of a witness to testify as an expert is a question addressed to the sound discretion of the trial judge, and his discretion is ordinarily conclusive. *Highway Commission v. Matthis, supra.* No question of abuse of discretion is raised and none is found.

**[5]** We note that at the close of all the evidence the trial judge withheld a ruling on the motion of Daybrook for a directed verdict and did not rule on this motion until after the jury verdict. We do not approve of this procedure and think it preferable to rule upon a motion for a directed verdict prior to the submission of a case to the jury. After a case has been submitted to a jury, the proper motion to be ruled upon at that time is a motion for judgment notwithstanding the verdict under Rule 50.

The other assignments of error have been considered, but we are of the opinion that the trial was free of prejudicial error.

In light of the disposition of this case, we do not deem it necessary to discuss the appeal of the defendant Twin-States from the denial of its motion for a directed verdict against Daybrook on its cross-action for indemnity on the implied warranty.

Affirmed.

Chief Judge MALLARD and Judge HEDRICK concur.