IRVIN D. BOOE, D/B/A WAUGHTOWN ELECTRIC CO. v. BILLY B. SHADRICK; BOB R. BADGETT; HOUSING PROJECTS, INC.; ELLERBE MANOR APTS., LTD.; WILKES TOWERS, LTD.; SHERATON TOWERS, LTD.; UNITED STATES FIDELITY & GUARANTY INS. CO.; HIGHLAND MORTGAGE CO.

No. 8618SC166

(Filed 7 April 1987)

1. **Evidence § 33.2— construction dispute—reputation of defendant—inadmissible hearsay**

    In an action arising from defendants' alleged failure to completely pay plaintiff for electrical installations performed by plaintiff in buildings owned by defendants, the trial court did not err by excluding testimony from the supervising architect that defendant Shadrick had the reputation of assigning small unsophisticated contractors to much larger projects than they normally handled and then blaming them for cost overruns and delays. The testimony was admittedly based on hearsay and not the witness's personal knowledge; any possible relevance of the testimony is far outweighed by its unreliability and by the unwarranted prejudice the evidence would produce. N.C.G.S. § 8C-1, Rule 403.

2. **Evidence § 48— construction dispute—expert architect—opinion that cost plus ten percent reasonable—inadmissible**

    The trial court did not err in an action arising from a construction dispute by not allowing the supervising architect, who had been received as an expert in architectural design and construction management, to express his opinion that cost plus ten percent would be a reasonable way to calculate the value of the services rendered by plaintiff. There was no evidence that the witness had any expertise in the field of electrical contracting and he was never asked to determine the reasonable value of the work.

**3. Quasi Contracts and Restitution § 2.2— construction dispute—quantum meruit —evidence sufficient for nominal damages only**

In an action arising from defendants' alleged failure to finish paying plaintiff for electrical installations performed by plaintiff in defendants' building, plaintiff presented insufficient evidence to support its claim for more than nominal damages under its *quantum meruit* theories where plaintiff totalled his wage and material costs and added ten percent; presented no evidence showing how many hours plaintiff's employees worked; no evidence concerning the wage rate or rates paid to those employees; no evidence detailing the character and nature of the services rendered; and no evidence describing the materials used, establishing the fair market value of the materials or substantiating the quantity of the materials that was necessary or reasonable. However, plaintiff presented ample evidence on all the elements for recovery in *quantum meruit* and was entitled to nominal damages.

Judge PHILLIPS dissenting.

APPEAL by plaintiff from *Williams (Fred J.), Judge.* Judgment entered 16 September 1985 in Superior Court, GUILFORD County. Heard in the Court of Appeals 6 June 1986.

This is a civil action wherein plaintiff sought damages for breach of express contracts covering electrical installations performed by plaintiff at Wilkes Towers in North Wilkesboro and Sheraton Towers in High Point, buildings owned by defendants. In the alternative, plaintiff sought relief in *quantum meruit.*

Without a written contract, plaintiff had begun the electrical work on Wilkes Towers and Sheraton Towers. During the course of the work, plaintiff received periodic payments from defendant Shadrick. These payments totalled approximately $195,500 for Wilkes Towers and $314,000 for Sheraton Towers. According to plaintiff, he received the last payment when the work was about ninety-five percent complete. Plaintiff completed the work, but defendant Shadrick refused plaintiff's demand for more money, insisting that the prior payments were sufficient to cover all work performed by plaintiff.

At the conclusion of the evidence, the judge submitted issues, and contrary to plaintiff's contentions, the jury found no oral contract for cost plus ten percent (10%) on either project and no specific fee contract on either project. The jury answered the following questions as indicated:

4. Did the plaintiff provide electrical material and labor to the defendants on the Wilkes Towers project under such

circumstances that the defendant should be required to pay for them?

ANSWER: Yes

4(a) What amount of damages, if any, is the plaintiff entitled to recover?

ANSWER: $26,000.00

5. Did the plaintiff provide electrical material and labor to the defendants on the Sheraton Towers project under such circumstances that the defendant should be required to pay for them?

ANSWER: Yes

5(a) What amount of damages, if any, is the plaintiff entitled to recover?

ANSWER: $40,500.00

After the jury returned its verdict, the court granted defendants' motion for judgment notwithstanding the verdict and ordered that plaintiff take nothing from the defendants. Plaintiff appealed.

*William B. Gibson for plaintiff-appellant.*

*Brinkley, Walser, McGirt, Miller, Smith and Coles by Stephen W. Coles for defendants-appellees.*

PARKER, Judge.

[1] Plaintiff assigns error to the exclusion of the testimony of the witness Arthur Cogswell, the supervising architect on each of the construction projects involved here, concerning the reputation of the defendant Shadrick. On *voir dire*, Cogswell testified that defendant Shadrick had a reputation of being "rather hard on subcontractors" in that he schemed to take advantage of small unsophisticated contractors by signing them on to do a much larger project than they normally handle and then blaming them for cost overruns and delays. Plaintiff contends that this testimony should have been admissible pursuant to G.S. 8C-1, Rule 404(b) to show a pattern of conduct indicative of defendant Shadrick's "mental state toward the contractual relationship." However, this testi-

mony was admittedly based on hearsay and not the witness' personal knowledge. Any possible relevance of the testimony is far outweighed by its unreliability and by the unwarranted prejudice the evidence would produce. G.S. 8C-1, Rule 403; *see Durham v. Quincy Mutual Fire Ins. Co.*, 311 N.C. 361, 317 S.E. 2d 372 (1984).

**[2]** Next, plaintiff contends the court erred in refusing to allow Cogswell, who had been received as an expert in architectural design and construction management, to express his opinion that cost plus ten percent (10%) would be "a reasonable way" to calculate the reasonable value of the services rendered by plaintiff to defendants. This argument is meritless. There was no evidence that Cogswell had any expertise in the field of electrical contracting. Competency of a witness to testify as an expert on a particular issue is directed to the discretion of the trial judge and that determination will not be disturbed unless there is no evidence to support it or an abuse of discretion. *Hamel v. Young Spring and Wire Corp.*, 12 N.C. App. 199, 182 S.E. 2d 839, *cert. denied*, 279 N.C. 511, 183 S.E. 2d 687 (1971). Moreover, Cogswell was never asked to determine the reasonable value of the work. He was only questioned as to his opinion concerning the reasonableness of the cost plus ten percent (10%) formula; he was never asked and never testified as to what figure constituted a reasonable figure. Plaintiff has failed to demonstrate any prejudice which could have resulted from the exclusion of the testimony. The assignment of error is overruled.

**[3]** Plaintiff's primary contention is that the court erred by granting defendants' motion for judgment n.o.v. because it presented insufficient evidence to support its claim for more than nominal damages under its *quantum meruit* theories. On a defendant's motion for judgment notwithstanding the verdict, the test is the same as for a motion for directed verdict. The court must consider all the evidence in the light most favorable to the plaintiff, giving plaintiff the benefit of every reasonable inference arising therefrom, to determine if the evidence is sufficient to be considered by the jury. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974); *Tate v. Bryant*, 16 N.C. App. 132, 191 S.E. 2d 433 (1972).

The standard for plaintiff's burden of proof on a *quantum meruit* theory was enunciated by this Court in *Environmental*

*Landscape Design v. Shields*, 75 N.C. App. 304, 306, 330 S.E. 2d 627, 628 (1985), as follows:

> To recover in *quantum meruit*, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously . . . . In short, if plaintiff alleged and proved acceptance of services and the value of those services, it was entitled to go to the jury on *quantum meruit*. (Citations omitted.)

Defendants do not question that they accepted these services; rather, they contend that plaintiff failed to prove the reasonable value of his services to recover on a *quantum meruit* theory.

Evidence of the nature of the work and the customary rate of pay for such work in the community at the time the work was performed is necessary to determine the reasonable value of services rendered. *Id.* at 307, 330 S.E. 2d at 629. A bill for services rendered is only some evidence of the value of one's services, and standing alone, it is insufficient to support an award of damages. *Id.*

In the case *sub judice*, in determining the amount owed to him, plaintiff totalled his wage and material costs and then added ten percent. However, from the record plaintiff presented no evidence showing how many hours plaintiff's employees worked; no evidence concerning what wage rate or rates were paid to these employees and no evidence detailing the character and nature of the services rendered. A broadside statement that the workers installed the electrical wiring tells the jury nothing about the complexity of the job and sheds only minimal light on the reasonable value of the work performed. Without documentation or other evidence establishing the wage rates and hours worked, the jury could not reach an informed conclusion as to whether these wage rates and hours were reasonable. Further, with regard to the material costs, the jury only heard testimony concerning the total amount of the costs. Plaintiff adduced no evidence describing the materials used, establishing the fair market value of the materials or substantiating that the quantity of materials used was necessary and reasonable. Accordingly, plaintiff's evidence "establishes no more than a formula by which he arrived at a total and a reiteration of his opinion that his bill was reasonable.

There is no independent evidence or objective indicia by which to gauge whether the plaintiff's rates were customary and reasonable in the business, in the community, and at the time." *Hood v. Faulkner*, 47 N.C. App. 611, 617, 267 S.E. 2d 704, 707 (1980).

Therefore, we conclude that plaintiff did not offer sufficient evidence of the reasonable value of the services for which he sought to hold the defendants accountable. However, in our view, the judgment notwithstanding the verdict was improper as plaintiff presented ample evidence on all the elements for recovery in *quantum meruit*. Where plaintiff establishes those elements, plaintiff is entitled to at least nominal damages. *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968). In this case, plaintiff was able to prove that it had rendered certain services to defendants and that those services were knowingly and voluntarily accepted. There was no showing that the services were rendered gratuitously. This evidence is sufficient to entitle plaintiff to nominal damages and the j.n.o.v. was improperly granted.

As we have concluded that plaintiff's evidence was legally insufficient to support a verdict for more than nominal damages, we elect not to reinstate the jury verdict or to award plaintiff a new trial. Instead, this case is remanded to the trial court for entry of an award of nominal damages. *See Harrell v. Lloyd Const. Co.*, 300 N.C. 353, 355, 266 S.E. 2d 626, 628 (1980).

Remanded with instructions.

Judge MARTIN concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

Though the evidence as to plaintiff's damages is not as pointed as it might have been, when its many parts are pieced together and the whole is viewed and analyzed in its most favorable light for the plaintiff it is sufficient, in my opinion, to support the verdict and the court erred in setting it aside. In addition to evidence showing what the labor and materials used on the project cost, there is evidence that the materials were obtained from a "very competitive" supplier; that all of plaintiff's work satisfied

the various inspectors (thus complying with the plans and specifications) and was 95% complete when defendant contractor breached their contract; that during the fourteen month period plaintiff worked on the projects defendant contractor daily observed what was being done, was knowledgeable about construction and its costs, periodically received payroll affidavits and lists of the materials plaintiff installed along with their costs, made twenty-two payments on one project and twenty-four on the other without complaint, and periodically certified to HUD that the costs covered by plaintiff's billings had been paid or incurred. The evidence also shows that before plaintiff was taken off the job he had expended $329,577.19 for labor and materials on the Sheraton project of which defendants had paid $314,523.02; and on the Wilkes job he had expended $200,020.03 and defendants had paid $195,514.06; and that defendant Shadrick finished the projects with plaintiff's employees and paid them the same hourly rate plaintiff did.

This evidence, more than a mere scintilla certainly, tends to indicate, in my view, that plaintiff's claimed costs were reasonable and necessarily expended on defendants' projects and that defendants so recognized. Nor was the verdict speculative. The $26,000 verdict on the Wilkes job simply reimbursed plaintiff for his unpaid billings ($4,505.97) and awarded him an 11% overhead charge ($21,494.03) on the $200,020.03 that the evidence shows he spent on that job during the seventeen month period; and the $40,500 verdict for the Sheraton job only paid plaintiff for his past due billings ($15,054.17) and awarded him an 8% overhead charge on the $329,577.19 that plaintiff had spent on that job during substantially the same period. Nor is the overhead or profit award either unreasonable or unsupported by evidence. During the course of construction, so the evidence shows, changes were made in the electrical part of the job several times and on each occasion *plaintiff submitted a request for a change order containing a 15% charge for overhead and profit, which defendants approved.* Furthermore, as is commonly known, overhead charges by businesses of all kinds are not only customary, they are necessary, and the charges that the jury implicitly approved in assessing the value of plaintiff's work were in keeping both with that practice and the evidence presented.