866 F.2d 1415
 10 U.S.P.Q.2d 1236
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harry DOWLESS, Plaintiff-Appellee,
v.
WARREN-RUPP HOUDAILLES, INC., Defendant-Appellant,
and
Houdailles Industries, Inc., Defendant.
Harry DOWLESS, Plaintiff-Appellant,
v.
WARREN-RUPP HOUDAILLES, INC.; Houdailles Industries, Inc.,
Defendants- Appellees.
 Nos. 87-3199(L), 87-3200.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1988.
Decided: Jan. 30, 1989.
 
 Robert Worthington Spearman (Renee J. Montgomery, Gary S. Maines, Pope McCorkle, Adams, McCullough & Beard, on brief), for appellant.
 Larry Love Coats (David E. Bennett, Rhodes, Coats & Bennett, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and ERVIN, Circuit Judges.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Invoking diversity jurisdiction, Harry Dowless sued Warren-Rupp Houdailles, Inc. (Warren-Rupp), a manufacturer of hydraulic industrial pumps. Dowless alleged breach of contract for Warren-Rupp's failure to pay him for an improvement that he devised for its pumps, common law unfair competition, and violation of North Carolina's unfair competition statute, N.C.G.S. Sec. 75-1.1.
 
 
 2
 The district court granted Warren-Rupp's motion for summary judgment on both unfair competition claims. The breach of contract claim was tried to a jury and resulted in a verdict of $1,000,000 for Dowless. The district court denied Warren-Rupp's post-verdict motion for judgment n.o.v., and, in the alternative, for a new trial.
 
 
 3
 Both parties appeal.[1] Dowless asserts that the district court erred in granting summary judgment for Warren-Rupp on his unfair competition claims. Warren-Rupp contends that the district court erred in admitting Dowless' evidence of damages. It goes further and argues that Dowless submitted no legally competent evidence of damages and that therefore it is entitled to judgment n.o.v. on the contract claim, or at least a new trial as to damages.
 
 
 4
 We affirm the judgment for Warren-Rupp on Dowless' unfair competition claims. We agree with Warren-Rupp that the district court improperly admitted evidence of Dowless' damages and failed properly to instruct the jury how to assess them. We think, however, that Warren-Rupp is entitled, not to a judgment n.o.v., but to a new trial only as to damages. We therefore affirm in part, reverse in part and remand for further proceedings.
 
 I.
 
 5
 In May, 1977, Dowless was employed by Kelly Springfield Tire Manufacturing Company (Kelly Springfield), which used Warren-Rupp pumps in its operations. Dowless wrote a letter to Warren-Rupp indicating that he had conceived of a design that would improve the operation of one of Warren-Rupp's pumps and asking Warren-Rupp to contact him if it was interested. Warren-Rupp, by its president, responded to Dowless as follows:
 
 
 6
 If you would let us know what your improvement consists of, we will evaluate it and if we choose to use it, we would reimburse you with some kind of flat fee.
 
 
 7
 Dowless then wrote to Warren-Rupp, describing an oil accumulation problem in the SA2-A model pump that caused the pump to fail. Dowless suggested that this problem could be solved by installing a drain plug in the inner side of the pump's diaphragm chamber.[2] Warren-Rupp responded in writing shortly thereafter, asserting that the drain plug proposed by Dowless was unnecessary. "[T]his is the first time that your suggestion has come to us," its president wrote. "If this was an inherent fault with the pump we would have discovered it years ago but in our experience this is not the case." Sometime thereafter, Dowless was transferred to another department where he did not have contact with Warren-Rupp pumps.
 
 
 8
 About three years after Dowless' correspondence with Warren-Rupp, Dowless suggested the drain plug device to his successor at Kelly Springfield. Kelly Springfield installed the device in some of its Warren-Rupp pumps. Evidence at trial indicated that the drain plug device increased the service life and decreased the maintenance cost of the pumps.
 
 
 9
 In late 1981, Warren-Rupp decided to install drain plugs on the SA2-A and other model pumps. There was evidence at trial that a Warren-Rupp representative had been shown a pump fitted with Dowless' drain plug device on a visit to Kelly Springfield some months earlier.[3] Shortly after discovering in 1984 that new model Warren-Rupp pumps contained drain plugs, Dowless brought this action against Warren-Rupp, alleging, among other things, breach of contract, unfair competition under North Carolina common law, and violation of North Carolina's unfair competition statute, N.C.G.S. 75-1.1.
 
 
 10
 Warren-Rupp moved for summary judgment on Dowless' unfair competition claims. The district court granted this motion, and Dowless proceeded to trial on implied-in-fact contract and quasi-contract theories. At trial, Dowless offered evidence of Warren-Rupp's retail and wholesale sales of pumps containing drain plugs, roughly $25 million and $15 million respectively, and of its gross profits on those sales, roughly $5.4 million. Warren-Rupp objected to the admission of these figures on the ground that Dowless had offered no evidence of the proportion of Warren-Rupp sales that were attributable to the drain plugs.[4] The district court itself voiced the concern that the sales figures bore "absolutely no correlation" to any benefit conferred on Warren-Rupp and suggested other ways that Dowless could attempt to prove the drain plug's value. In the end, however, the court allowed the evidence to be introduced.
 
 
 11
 Dowless put forth no evidence at trial tending to show the value of the services he provided to Warren-Rupp or the contribution of the drain plug to Warren-Rupp sales. In his summation to the jury, Dowless' counsel stressed that five percent of Warren-Rupp's sales in the five years that its pumps had contained drain plugs would amount to $750,000, and asked the jury to return a verdict for twice that amount. The district court charged the jury that it could find the existence of either an implied-in-fact contract or quasi-contract. It instructed the jury specifically on the measure of damages for breach of an implied-in-fact contract. Its instruction on the measure of damages for breach of a quasi-contract was not as specific. The jury returned a verdict against Warren-Rupp for breach of an implied-in-fact contract and awarded Dowless $1,000,000. Warren-Rupp moved for a judgment n.o.v., or, in the alternative, for a new trial. The district court denied the motion, and this appeal and cross-appeal followed.
 
 II.
 
 12
 We address first Dowless' recovery for breach of contract.
 
 
 13
 The jury found that a contract existed between Dowless and Warren-Rupp, and we accept this finding. However, even if a contract existed, it is at once obvious that the contract did not fix the compensation Dowless was entitled to receive. Therefore, the question we must address is the proper measure of damages under North Carolina law when a contract is silent as to the compensation to be paid.
 
 
 14
 Warren-Rupp contends that Turner v. Marsh Furniture Co., 217 N.C. 695, 9 S.E.2d 379 (1940), is the controlling authority.[5] In Turner, plaintiff, while working as a carpenter in a furniture factory, conceived of a labor-saving device to be used in the manufacturing process. He disclosed his idea to the president of the furniture company, who told him to reduce it to drawings and the company would have the device constructed and " 'if it works satisfactorily, I will pay you for it, and pay you well'." 217 N.C. at ----, 9 S.E.2d at 379. Plaintiff did as he was told; the company constructed the device and it worked. The question raised in plaintiff's suit for compensation was the proper measure of plaintiff's recovery for nonpayment. The Supreme Court of North Carolina announced the general rule that
 
 
 15
 when there is no agreement as to the amount of compensation to be paid for services, the person performing them is entitled to recover what they are reasonably worth, based on the time and labor expended, skill, knowledge and experience involved, and other attendant circumstances, rather than on the use to be made of the result or the benefit to the persons for whom the services are rendered.
 
 
 16
 217 N.C. at ----, 9 S.E.2d at 380. Applying this rule, the court held that the trial court erroneously had instructed the jury that plaintiff was entitled to recover such sum of money as would represent the value of the invention to the defendant. The court held that the jury should have been instructed that plaintiff was entitled to recover only the " 'reasonable value of his services rendered, taking into consideration the amount of time, work and skill required, and also the benefits, if any, resulting to the defendant, and other facts and circumstances' ". 217 N.C. at ----, 9 S.E.2d at 380.
 
 
 17
 Dowless argues that Turner is distinguishable from his case because in Turner the plaintiff could be said to have given his idea to the defendant who then engaged him to reduce it to practical application, while in the instant case, Dowless could be said to have sold his idea itself. Subsequent North Carolina decisions persuade us, however, that the rule of Turner applies here. For example, in Hood v. Faulkner, 47 N.C.App. 611, 267 S.E.2d 704 (1980), the parties entered into a building contract that named the price for the basic work and provided that additional labor and materials supplied by plaintiff would be at extra cost to defendants. The contract, however, did not specify the cost of extra labor or materials or a formula for their determination. Plaintiff provided extra labor and materials and sued to recover their value from defendant, who had refused to pay. The Court of Appeals of North Carolina held that where a contract provided that a plaintiff would provide extra labor and materials but failed to fix compensation therefor "[p]laintiff's action ... sounds in quantum meruit and is based on the promise to pay which the law implies." The Court went on to say that "[t]he proper measure of plaintiff's recovery in such a case is the reasonable value of the services rendered to and accepted by the defendant," citing Turner and other authorities. 47 N.C.App. at ----, 267 S.E.2d at 706-707. See also Indus. & Textile Piping, Inc. v. Indus. Rigging Services, Inc., 69 N.C.App. 511, ----, 317 S.E.2d 47, 50, review denied, 312 N.C. 83, 321 S.E.2d 895 (1984) (quantum meruit would be proper measure of recovery for extra work, not specified in subcontract, that subcontractor performed for general contractor); Ellis Jones, Inc. v. Western Waterproofing Co., Inc., 66 N.C.App. 641, ----, 312 S.E.2d 215, 218 (1984) (under implied-in-fact contract in which price is not specified, damages are based on the reasonable value of the services rendered pursuant to the request and agreement to pay therefor).
 
 
 18
 From these cases, we distill a number of conclusions. First, the district court erred in instructing the jury that, as to damages, it could find the existence of either an implied-in-fact contract or quasi-contract. The court should have instructed the jury that if it found a contract generally, as to damages it could find only a quasi-contract for which the measure of recovery is quantum meruit, the reasonable value of materials and services rendered by the plaintiff that were accepted and used by the defendant.[6] More importantly, the district court should not have admitted evidence of Warren-Rupp's sales and net income during the period that it employed the Dowless device. Such evidence is irrelevant here, and there can be no doubt, even though the jury was instructed not to consider Warren-Rupp's financial condition in assessing damages, that admission of the evidence was prejudicial, because Dowless presented no evidence of the cost to him of developing the device or of what the market price for design and engineering services in the Fayetteville, North Carolina area would have been. There was therefore no evidence to support a verdict of $1,000,000 other than sheer speculation derived from the evidence of Warren-Rupp's sales and profits.
 
 
 19
 While Dowless failed to prove damages properly, we do not think that Warren-Rupp was entitled to judgment n.o.v. Unquestionably, Dowless proved a breach of contract and the jury so found. It is the rule in North Carolina that a plaintiff who proves a breach of contract is entitled at least to nominal damages. See Builders Supply v. Midyette, 274 N.C. 264, 162 S.E.2d 507 (1968); Catoe v. Helms Construction and Concrete Co., No. 85CVS11893, slip op. at 6-7 (N.C.App. Oct. 4, 1988); Booe v. Shadrick, 85 N.C.App. 230, 354 S.E.2d 305 (1987), rev'd on other grounds, 322 N.C. 567, 369 S.E.2d 554 (1988). While there was error in the submission of the case to the jury as to damages and a failure on the part of Dowless to offer proof of damages as prescribed by Turner, we do not think that we should require that the judgment be reduced to nominal damages. Rather we follow the lead of North Carolina cases in exercising our discretion to grant plaintiff a new trial solely on the issue of damages in conformity with what is said here. See Harrell v. W.B. Lloyd Construction Company, 300 N.C. 353, 266 S.E.2d 626 (1980); Hood v. Faulkner, 47 N.C.App. 611, 267 S.E.2d 704 (1980).
 
 III.
 
 20
 Next we turn to Dowless' unfair competition claims. Dowless claims common law unfair competition and unfair competition as prohibited by N.C.G.S. Sec. 75-1.1. The district court deemed Dowless' common law claim to be merely a restatement of his breach of contract claim and ruled that Dowless could recover for unfair competition, if at all, only under his statutory claim. With respect to Dowless' statutory claim, it concluded that the essential purpose of the statute was to protect the consuming public; since Dowless' claim had nothing to do with consumer protection, it held, the statute was inapplicable.
 
 
 21
 We think the district court reached the correct result.
 
 
 22
 Dowless argues that there existed a confidential relationship between himself and Warren-Rupp, that Warren-Rupp breached that relationship, and that that breach constituted unfair competition under North Carolina common law. However, even assuming that there was a confidential relationship that Warren-Rupp breached--a matter hotly disputed by the parties--we do not think that this would constitute unfair competition under North Carolina law. While it is true, as one district court has observed, that "North Carolina's law of unfair competition is 'the child of confusion,' " Polo Fashions, Inc. v. Gordon Group, 627 F.Supp. 878, 891 (M.D.N.C.1985) (citation omitted), one trend is clear: an essential element of the law of unfair competition in North Carolina is a dispute between business competitors. See Charcoal Steak House v. Staley, 263 N.C. 199, 139 S.E.2d 185 (1964); Carolina Aniline & Extract Co., Inc. v. Ray, 221 N.C. 269, 20 S.E.2d 59 (1942); Liberty/UA, Inc. v. Eastern Tape Corp., 11 N.C.App. 20, 180 S.E.2d 414, cert. denied, 278 N.C. 702, 181 S.E.2d 600 (1971). Thus in Carolina Aniline & Extract Co., the Supreme Court of North Carolina stated that the "test" for unfair competition "is simple, and lies in the answer to the question: Has the plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair?" 221 N.C. at ----, 20 S.E.2d at 61. Likewise, in Charcoal Steak House, that court declared that "[u]nfair competition amounts to this: 'One person has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing (one) will be restrained from so doing.' " 263 N.C. at ----, 139 S.E.2d at 187 (citation omitted).
 
 
 23
 Based on these opinions, we conclude that Dowless cannot maintain a claim against Warren-Rupp for common law unfair competition. Dowless simply is not a business competitor of Warren-Rupp; indeed, Dowless admits as much in his brief. Dowless concedes that "[t]here are no [North Carolina] cases involving confidential relationships in the area of idea or design disclosures," but asserts that "there is no doubt that the North Carolina courts would follow basic principles of unfair competition law and would hold that a breach" of such a relationship constitutes unfair competition. While Dowless cites a number of cases from other jurisdictions and the works of noted commentators to show that this would be a wise holding, in a diversity case we cannot extend North Carolina law beyond that declared by North Carolina's highest court. Because North Carolina's highest court has indicated that North Carolina unfair competition law does not apply in a situation like the one at bar, we conclude that the district court correctly granted Warren-Rupp's motion for summary judgment with respect to Dowless' common law claim.
 
 
 24
 We reach the same conclusion with respect to Dowless' claim under N.C.G.S. Sec. 75-1.1. That statute, which is modeled after the Federal Trade Commission Act, declares unlawful "[u]nfair methods of competition in or affecting commerce." Dowless argues that Warren-Rupp's breach of its confidential relationship with Dowless constitutes an "unfair method of competition" in violation of the act.
 
 
 25
 The scope of Sec. 75-1.1, like that of common law unfair competition, is something less than clear. Yet in the leading case of Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397 (1981), the Supreme Court of North Carolina made clear that an essential purpose of the state legislature in enacting the unfair competition statute was to provide "an effective private cause of action for aggrieved consumers." 302 N.C. at ----, 276 S.E.2d at 400.[7] Indeed, the court defined an "unfair practice" for the purposes of Sec. 75-1.1 as one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." 302 N.C. at ----, 276 S.E.2d at 403 (citations omitted) (emphasis added). A number of courts since Marshall, including our own, have recognized the consumer protection orientation of Sec. 75-1.1. See Lindner v. Durham Hosiery, 761 F.2d 162, 165-66 (4 Cir.1985); Bunting v. Perdue, Inc., 611 F.Supp. 682, 690-92 (E.D.N.C.1985); Winston Realty Co., Inc. v. G.H.G. Inc., 314 N.C. 90, 331 S.E.2d 677, 680, 682 (1985); Morris v. Bailey, 86 N.C.App. 378, ----, 358 S.E.2d 120, 123 (1987); Buie v. Daniel Int'l Corp., 56 N.C.App. 445, 289 S.E.2d 118 petition denied, 305 N.C. 759, 292 S.E.2d 574 (1982). Cf. Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148-49 (4 Cir.1987) (upholding summary judgment for plaintiff in suit under Sec. 75-1.1 where acts by defendant, a business competitor, were likely to confuse the public as to the source of its goods).
 
 
 26
 Given the consumer protection goals of the North Carolina statute, we do not think that Dowless can maintain a claim for unfair competition under it. As he himself admits, he does not bring this action as a consumer. He has not alleged any possible deception or confusion of consumers that may come about as a result of Warren-Rupp's actions. True, he has alleged a breach of contract, but we have said that an intentional breach of contract, without more, does not constitute a violation of Sec. 75-1.1. Atlantic Purchasers, Inc. v. Aircraft Sales, Inc. 705 F.2d 712, 715 (4 Cir.), cert. denied, 464 U.S. 848 (1983). Overall, we think that the district court correctly granted Warren-Rupp's motion for summary judgment on Dowless' claim under Sec. 75-1.1.
 
 
 27
 AFFIRMED IN PART; REVERSED IN PART; NEW TRIAL AS TO DAMAGES GRANTED.
 
 
 
 [1]
 This is the second appeal to us. We previously decided jurisdictional issues, Dowless v. Warren-Rupp Houdailless, Inc., 800 F.2d 1305 (4 Cir.1986)
 
 
 [2]
 There was evidence that persons unrelated to this action had obtained a patent on the device ten years before Dowless wrote to Warren-Rupp. There was no evidence, however, that Dowless knew of the patent
 
 
 [3]
 There was also evidence that the decision to install drain plugs was entirely unrelated to Dowless' efforts, that it came about as a result of suggestions made by Warren-Rupp distributors at a management meeting in mid-1981. The jury, however, resolved this factual question in favor of Dowless, and we perceive no basis on which to disturb this finding
 
 
 [4]
 Ironically, there was evidence that Warren Rupp's sales and profits were greater before it began installing the drain plugs in its pumps
 
 
 [5]
 Warren-Rupp's argument implicitly assumes that in this diversity action, the law of North Carolina applies. While Dowless seeks to distinguish Turner, he does not assert that the law of any other jurisdiction controls. We decide the case under North Carolina law on the sub silentio agreement that North Carolina law controls
 
 
 [6]
 We recognize that North Carolina law in this area is not entirely clear. Some North Carolina courts expressly have equated the measure of damages under Turner with the measure under quantum meruit. See, e.g., Paxton v. OPF, Inc., 64 N.C.App. 130, ----, 306 S.E.2d 527, 530 (1983); Harrell v. W.B. Lloyd Construction Co., 41 N.C.App. 593, ----, 255 S.E.2d 280, 282, aff'd. 300 N.C. 353, 266 S.E.2d 626 (1980); Hood v. Faulkner, 47 N.C.App. 611, 267 S.E.2d 704 (1980). Others have drawn a distinction between the two. See, e.g., Thormer v. Lexington Mail Order Co., 241 N.C. 249, 85 S.E.2d 140 (1954); Ellis Jones, 66 N.C.App. at ----, 312 S.E.2d at 218. Until the Supreme Court of North Carolina resolves the issue in another fashion, we follow the lead of Hood and other cases in equating the measure of damages under Turner with that under quantum meruit
 
 
 [7]
 The Marshall court referred specifically to the sections of the statute providing for a civil action and attorney's fees, but its reasoning obviously applies to the statute as a whole. See Lindner v. Durham Hosiery Mills, 761 F.2d 162, 165-66 (4 Cir.1985) (discussing Marshall )