MYRNA E. TYSON, By her Next Friend, JOAB L. TYSON v. LONG MAN-
UFACTURING COMPANY, INC.: and FRANK ALLEN and W. A.
ALLEN, t/a FARMVILLE IMPLEMENT COMPANY.

(Filed 25 February, 1959.)

**1. Sales § 30—**

A manufacturer owes to the ultimate user the duty not to construct
the article with hidden defects which might result in injury, and to give
notice of any concealed dangers, but ordinarily the manufacturer is not
liable for injuries from patent dangers.

**2. Same—**

The seller can have no greater liability for injury to the user of the
article manufactured, resulting from alleged defect in its manufacture,
than the manufacturer itself.

**3. Same—**

Plaintiff's evidence tended to show that she was injured while work-
ing on a tobacco harvester when, by reason of the sudden lurching of
the machine, she was thrown off balance and her thumb caught in
a sprocket which was only partially protected by a guard. Plaintiff
testified to the effect that she understood the operation of the harvester,
that it was simple, and that there was nothing to keep her from seeing
the open sprocket. *Held:* Nonsuit in her action against the manufactur-
er and seller was properly entered, since there is no evidence of a latent
defect or concealed danger or that the harvester was inherently danger-
ous when used for its intended purpose.

**4. Same: Negligence § 18—**

Evidence that after plaintiff was injured when her thumb was caught
in an open sprocket wheel, the manufacturer in later models substituted
a solid disc sprocket wheel, is incompetent for the purpose of showing
negligence of the manufacturer and seller on the occasion in controversy.

**5. Appeal and Error § 41—**

The exclusion of evidence cannot be prejudicial when the judgment
of nonsuit would have to be affirmed even though the excluded evidence
be considered.

Appeal by plaintiff from *Sharp, S. J.,* 6 October Term 1958 of Pitt.

Civil action for damages for injury to the thumb on the left hand
of Myrna E. Tyson, allegedly caused by the actionable negligence of
the defendants.

From a judgment of involuntary nonsuit entered at the close of
plaintiff's evidence, she appeals.

*Charles H. Whedbee and James & Speight for plaintiff, appellant.*
*Sam B. Underwood, Jr., and Henry C. Bourne for defendants,*
*appellees.*

PARKER, J.    Plaintiff's thumb on her left hand was injured on 22 July 1955, while she was looping tobacco as an employee of Carlton Young on a Silent Flame Tobacco Harvester manufactured by the defendant Long Manufacturing Company, Inc., and sold to Carlton Young or his father by the defendant Farmville Implement Company.

Plaintiff's injuries occurred while the tobacco harvester being driven across a tobacco field by Carlton Young was in operation harvesting green tobacco leaves from the stalk. This machine was 12½ feet high, and about 6 feet above the ground it had a platform 10 feet wide and 14 feet long. Four people were on the machine under the platform pulling the tobacco leaves from the stalk. Plaintiff and Christine Hall were standing on the platform on opposite sides of the conveyor chain looping the tobacco leaves, when they reached them. The machine operated on a continuous chain principle. This conveyor chain made horizontal runs over a sprocket at the back of the machine to a sprocket at the front, passing by the loopers. When the four people on the machine under the platform pulled the tobacco leaves from the stalk, they put them in clips holding a bundle of tobacco leaves attached to the conveyor chain. The clips were about 20 inches apart on plaintiff's side of the conveyor chain. They alternated on the opposite side. A stick some 12 or 18 inches lower than the horizontal run of the conveyor chain was between it and the loopers. The loopers' work was done when the conveyor chain passed them on its horizontal run.

This is plaintiff's testimony as to how her injury occurred: "It had been raining. . . . The chain was in motion at the time. The chain runs from the back to the front. I was looping. The duty of the looper is to take the tobacco out of the chain and put it on the stick. In doing that I pull the tobacco from the clip. I wrap a thread around it. After I pull the tobacco and wrap the thread around it I put it on the stick. There is a holder for the stick here, and another holder back there. There is a forked stick arrangement to hold the tobacco so there was a stick between me and the chain. The holder is provided for the stick. I was pulling the tobacco out of the clip, looping it and then putting it on this stick about in here. Then when the machine lurched, it kind of threw me off, over against the stick; I caught my finger, caught in the sprocket between the holder and the guard and there wasn't anything I could do to get it out without crushing it. This perforated sprocket which is admitted to be from a Silent Flame machine is the type of wheel in which I caught my hand. My thumb caught up in here like this. Like this and see that the guard just covers half of it or maybe two-thirds."

Plaintiff at the time of her injury was 17 years old. She had been looping tobacco on a tobacco harvester or under a looping shed 3 or 4 years. She had worked on this tobacco harvester most of the summer in 1955, when they were putting in tobacco, and was familiar with its operation. She testified on cross-examination: "I pulled the bundles off with my left hand and tied them with my right around the stick. . . . I was standing facing the chain and facing the tobacco as it came toward me. . . . The tying thread was behind me. . . . The bundle of tobacco I was reaching for was approximately where the paper bag is. When the machine lurched I fell up against the stick, and I got my finger caught there in the sprocket. The bundle of tobacco wasn't quite ten inches from it. . . . The tobacco was in the clip up against the guard on the sprocket. It just was. It just had gotten to it. I was far enough back that I could see the tobacco in this clip at the time I reached for it. I did see it. I could see the sprocket from where I was standing, but I was watching the tobacco; I mean I had never noticed the sprocket close enough to notice that it had holes in it. . . . If it had been a solid wheel or sprocket I never would have caught my finger, or if it had had a guard. It was not a solid sprocket, no sir. It did not have a guard all the way across it. It did not have anything there to keep me from seeing it. I understand the operation of that conveyor chain moving over the sprocket. It is a simple operation. The lurch of the machine threw me off balance and my hand into the sprocket."

When the tobacco harvester is in operation in a tobacco field, it moves slowly.

In substance these are plaintiff's allegations of negligence: The Silent Flame Tobacco Harvester was negligently constructed in that it had a sprocket with holes large enough for a person's thumb to be inserted therein and inadequately guarded, that the sprocket and guard were so constructed that the imminent danger therein was not readily observable and appreciated by a reasonably prudent person, and constituted a concealed danger, which was the proximate cause of plaintiff's injuries. That such negligence of the manufacturer, Long Manufacturing Company, Inc., was imputed to the seller, its co-defendant Farmville Implement Company.

In *Campo v. Scofield*, 301 N.Y. 468, 95 N.E. 2d 802, the Court said: "The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers. Accordingly, if a remote user sues a manufacturer of an article for injuries suffered, he must

allege and prove the existence of a latent defect or a danger not known to plaintiff or other users." The first sentence quoted from this New York case is quoted by this Court in *Kientz v. Carlton,* 245 N.C. 236, 241, 96 S.E. 2d 14, 18.

In the *Campo v. Scofield case,* plaintiff working on his son's farm, was engaged in feeding onions into an "onion topping" machine, when his hands became caught in revolving steel rollers and were badly injured. He sued upon the theory that the manufacturer was negligent in not providing guards. The Court held that the complaint failed to state a cause of action. The gist of the holding is that a manufacturer is under no duty to protect the user against a danger which is perfectly obvious. The Court said: "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof."

In *Yaun v. Allis-Chalmers Mfg. Co.,* 253 Wis. 558, 34 N.W. 2d 853, plaintiff, a farm hand, was injured when he slipped without negligence and fell so that his fingers were caught in the unguarded rollers of a pick-up hay baler manufactured by the defendant. The supervisor of inspectors for the Industrial Commission of Wisconsin testified for plaintiff that in his opinion a hood type covering of the rollers similar to that used on combines and harvesters would have prevented plaintiff's accident. In reversing a judgment for plaintiff, the Court said: "The respondent contends that 'The rule of law governing this case is that a manufacturer of a product is liable to a user thereof who sustains injuries by reason of the manufacturer failing to exercise reasonable care in the adoption of a safe plan or design, where such failure renders said product imminently dangerous to life and limb when used in a manner and for a purpose for which it is manufactured, whether the danger be opened or hidden.' The cases do not support the respondent's rule. . . . We are forced to the conclusion that the hay baler when used as intended was not a thing of danger. There is no basis in the record for a finding that the respondent's injuries resulted from negligence of the manufacturer."

In *Stevens v. Allis-Chalmers Mfg. Co.,* 151 Kan. 638, 100 P. 2d 723, plaintiff, a farmer, was severely injured by coming in contact with a whirling middle universal joint in open and plain view between the tractor and the combine and was not guarded, which was a part of a "take-off" shaft for delivering power from a farm tractor to a

small harvester-thresher familiarly known as a "combine." The Court said: "The two leading cases upon the liability of manufacturers for defects which made the products dangerous are *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N.E. 1050, Ann. Cas. 1916C 440, L.R.A. 1916F 696; and *Huset v. J. I. Case Threshing Mach. Co.*, 8 Cir., 120 F. 865, 61 L.R.A. 303. In the *Buick Motor Co.* case, supra, *Mr. Justice Cardozo* wrote the opinion of the majority of the court holding the defendant manufacturer liable for injury caused by a defective automobile wheel, which defendant could have discovered by proper inspection. The difference between the *Buick Motor Co.* case and the case at bar is, of course, that in that case the plaintiff did not know of the danger of the defective wheel. In *Huset v. J. I. Case Threshing Mach. Co.*, supra, it was alleged that the manufacturer had knowingly covered up a defect in the machine and plaintiff was injured thereby. Judge Sanborn carefully limits his holding to such a case,— thereby differing from the *Buick Motor Co.* case, supra. Of course, the plaintiff in the *Huset* case did not have a chance to observe the defect or danger in the machine as plaintiff did in the instant case." The Kansas Supreme Court reversed a judgment for plaintiff with instructions to enter a judgment for the defendants. Plaintiff in the case here cites in his brief, and relies on the *MacPherson v. Buick Motor Co.* case.

In *Kientz v. Carlton*, supra, plaintiff, an employee of Carlton, was injured when his left foot went under the raised back portion of a mower and came in contact with the rotating blade. Carlton bought the mower from Sears, Roebuck and Company. Plaintiff sued both. In affirming a judgment of involuntary nonsuit entered against the plaintiff in the trial court, the Court said in respect to the case against Sears, Roebuck and Company: "In our opinion the evidence is insufficient to support a finding that this mower was an inherently dangerous instrumentality and that Sears should have reasonably foreseen that injurious consequences were probable if operated by a person who was not himself at fault. . . . The absence of the several alleged safety features was obvious, not latent. . . . Absent an express warranty, certainly no greater duty would rest upon the seller than upon the manufacturer of such a machine."

In cases dealing with a manufacturer's liability for injuries to remote users, the courts have always stressed the duty of guarding against *hidden* defects and of giving notice of concealed dangers. *Rosebrock v. General Electric Co.*, 236 N. Y. 227, 140 N.E. 571; *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N.E. 1050; *Statler v. George A. Ray Mfg. Co.*, 195 N. Y. 478, 88 N.E. 1063;

*Jamieson v. Woodward & Lothrop,* 247 F. 2d 23. As was said in *Lane v. City of Lewiston,* 91 Me. 292, 39 A. 999, "no one needs notice of what he already knows."

Plaintiff was experienced in looping tobacco on a tobacco harvester, and had been working on the tobacco harvester on which she was injured most of the summer in 1955, when tobacco was being pulled. There is no evidence of negligence in the design or construction of the machine. Entirely lacking is the slightest evidence that the sprockets and conveyor chain on the platform of the tobacco harvester had a latent defect or a danger concealed from plaintiff, or that they were in operation inherently dangerous to her. She testified on cross-examination: "It was not a solid sprocket, no sir. It did not have a guard all the way across it. It did not have anything there to keep me from seeing it. I understand the operation of that conveyor chain moving over the sprocket. It is a simple operation." Further, in our opinion, the evidence is insufficient to show that the defendants foresaw or should reasonably have foreseen danger and injurious consequences to a looper on this tobacco harvester from a perforated sprocket with half of it or maybe two-thirds of it covered with a guard, and plainly visible, when the tobacco harvester was being used for its intended purpose.

We find no evidence of negligence upon which a verdict for plaintiff could be based.

The appellant assigns as error that the trial court refused to permit testimony before the jury that later models of the Silent Flame Tobacco Harvester manufactured by the Long Manufacturing Company, Inc. had solid disc sprocket wheels. This evidence was offered for the avowed purpose of showing that defendants were negligent on the particular occasion in controversy. It was properly excluded. *Fanelty v. Jewelers,* 230 N.C. 694, 55 S.E. 2d 493; *Shelton v. R.R.,* 193 N.C. 670, 139 S.E. 232; *Aiken v. Mfg. Co.,* 146 N.C. 324, 59 S.E. 696.

In *Pontifex v. Sears, Roebuck & Co.,* 226 F. 2d 909, the Court said: "We do not think, however, that it can be held to be negligence to sell an old model machine not equipped with a safety device of later models." To the same effect see *Kientz v. Carlton, supra.*

The appellant further assigns as error the exclusion of testimony of Ada Grey Harris to the effect that her finger was injured in 1955 by being caught, in some way not shown by the evidence, in a hole in a sprocket of a tobacco harvester having the same kind of sprocket and conveyor chain as the machine here, when she was looping tobacco.

Had such evidence been allowed it could not have affected our decision.

The judgment of nonsuit below is
Affirmed.