GUSTER McCOLLUM v. GROVE MANUFACTURING COMPANY

No. 8118SC966

(Filed 20 July 1982)

**1. Sales § 22— products liability claim against manufacturer—no latent defects and concealed dangers—no breach of standard of care**

In a personal injury action in which plaintiff was struck by a crane designed and manufactured by defendant, plaintiff failed to show any breach of the standard of care owed by the manufacturer where the plaintiff failed to prove the existence of a latent defect or of a danger not known to the plaintiff or other user.

**2. Sales § 22— products liability—restricted visibility of crane—no evidence of latent defect**

Plaintiff failed to show negligence in the restricted visibility afforded the operator of a crane by the design of that crane where he testified that he knew of the restricted visibility of the crane operator and where all people involved in the use of the crane knew of the restricted visibility of the crane.

**3. Sales § 22— products liability—failure to equip crane with warning devices—no duty to do so where defects obvious**

Under our case law which follows the "patent danger" rule, a manufacturer has no duty to equip his product with safety devices to protect against defects and dangers that are obvious. Therefore, where plaintiff instituted an action to recover damages for injuries sustained when he was struck by a crane designed and manufactured by defendant, his claim based on negligence in defendant's failure to equip the crane with warning devices must fail since (1) the defect in the crane was obvious and (2) plaintiff failed to show that the negligence proximately caused the injuries he sustained.

**4. Negligence § 5; Sales § 23— crane not inherently dangerous instrumentality**

In an action instituted by plaintiff to recover damages for injuries sustained when he was struck by a crane designed and manufactured by the defendant, plaintiff failed to show that the crane was an inherently dangerous instrumentality where the crane was being used for its intended purpose at the time of the accident and, over a six year period, the crane was involved in only one other accident.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 16 March 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 April 1982.

Plaintiff instituted this action to recover damages for injuries sustained when he was struck by a crane designed and manufactured by the defendant. In his negligence count, plaintiff contends that the crane operator's vision was restricted because of the crane's design; that the crane had no warning devices to alert those working nearby of the crane's movement; and that the crane was inherently dangerous. By separate counts, plaintiff sought to recover from defendant on the theories of strict liability and breach of warranty. Defendant answered, denying the material allegations of the Complaint and asserting, among other defenses, the negligence of the plaintiff and the negligence of the crane operator.

*Stanley E. Speckhard and Donald K. Speckhard, for plaintiff appellant.*

*Bateman, Wishart, Norris, Henninger & Pittman, by Robert J. Wishart, for defendant appellee.*

BECTON, Judge.

I

FACTS AND PROCEDURAL HISTORY

The parties stipulated that the plaintiff was struck by a crane on 15 June 1977 while working for Carolina Cast Stone Company, Inc. (Carolina Cast Stone); that the crane had been designed and manufactured by the defendant, Grove Manufacturing Company, in June 1975 and had subsequently been sold to Carolina Cast Stone; and that the crane was in substantially the same condition at the time of the accident as it had been when it left the defendant's possession.

Plaintiff's evidence tended to show that Carolina Cast Stone manufactured heavy pre-cast stones for the building industry, that these stones were stored in vertical positions leaning on A-frames in the company yard, and that cranes were used to move the stones about. The boom of the crane manufactured by defendant was positioned in front of the crane operator and to his right, resulting in a blind spot to the operator. The plaintiff was in the operator's blind spot when struck. At the time of the accident, Charles Mattison was operating the crane, and plaintiff's job was to connect the cable on the boom of the crane to the stones to be moved. Charles Cagle, who was then yard supervisor for Carolina Cast Stone, was standing to the crane operator's left.

Cagle testified that "as the crane approached, [plaintiff] got into a position that disturbed me a bit, and I yelled to [plaintiff] to move but it was too late and he was pinned between the stone and the crane." According to Cagle, the crane operator told Cagle that he had heard Cagle call to the plaintiff and had reacted by hitting both the accelerator and the brakes at the same time. Cagle stated further:

> We customarily used a signal man when engaged in close work. I don't believe the work we were engaged in at the time of the accident could be described as close work. There was no signal man at that time. . . . I was not directing Charlie Mattison, the crane's operator, immediately prior to the accident.

Mattison testified differently. He stated that he was responding to a signal from Cagle as he approached the stone panel. He also testified that the plaintiff came in front of the crane in his blind spot and that he did not see plaintiff. Mattison denied telling Cagle that he had panicked or that he had hit both the accelerator and the brakes at the same time. The crane was on a large concrete pad. Mattison testified, "The right front wheel slipped off of [the concrete] and that's when it hit the panel and that's where I saw [plaintiff]."

Plaintiff testified that the crane stopped and was stationary for a few minutes before he went in front of it, and that "before I knew anything, the crane was on me."

Phillip Joseph Bisesi, an expert in mechanical engineering, testified that the boom was in the center of the crane and that

McCollum v. Grove Mfg. Co.

the cab was behind it to the left of center, resulting in an obstruction to the operator's vision across a 25° angle. He indicated that the front bumper of the crane was 95 inches across and that the operator's vision was obstructed across 60 inches of the bumper, assuming no allowance for any change of position of the operator. Bisesi testified that a curved mirror placed on the front of the crane would enable the operator to see in front of the entire bumper.

At the close of plaintiff's evidence, the defendant moved for a directed verdict, and the motion was allowed. The plaintiff's motion for a new trial was denied, and plaintiff appeals.

## II

ANALYSIS

For the reasons that follow, the trial court was correct in granting defendant's motion for a directed verdict and in denying plaintiff's motion for a new trial.

"A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff." *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E. 2d 678, 680 (1977). On such a motion, the court must consider the evidence in the light most favorable to the plaintiff, taking all evidence which tends to support plaintiff's position as true, resolving all evidentiary conflicts in favor of the plaintiff, and giving the plaintiff the benefit of all inferences reasonably to be drawn in his favor. *Daughtry v. Turnage*, 295 N.C. 543, 246 S.E. 2d 788 (1978). All evidence admitted, whether competent or not, must be given full probative force. *Beal v. Supply Co.*, 36 N.C. App. 505, 244 S.E. 2d 463 (1978). The testimony of the plaintiff's witnesses must be accepted at face value. *Rayfield v. Clark*, 283 N.C. 362, 196 S.E. 2d 197 (1973).

(1)  The Negligence Claim

[1]  The essential elements of an action for products liability based upon negligence include "(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury."

*City of Thomasville v. Lease-Afex, Inc.,* 300 N.C. 651, 656, 268 S.E. 2d 190, 194 (1980).

As to the standard of care, a manufacturer is under a duty to those who use his product to exercise that degree of care in its design and manufacture that a reasonably prudent man would use in similar circumstances. *Corprew v. Chemical Corp.,* 271 N.C. 485, 157 S.E. 2d 98 (1967); *Gwyn v. Motors, Inc.,* 252 N.C. 123, 113 S.E. 2d 302 (1960). The manufacturer of a machine which is dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers. In a case against such a manufacturer, the plaintiff must prove the existence of a latent defect or of a danger not known to the plaintiff or other users. *Tyson v. Manufacturing Co.,* 249 N.C. 557, 107 S.E. 2d 170 (1959); *Kientz v. Carlton,* 245 N.C. 236, 96 S.E. 2d 14 (1957); *Hamel v. Wire Corp.,* 12 N.C. App. 199, 182 S.E. 2d 839, *cert. denied,* 279 N.C. 511, 183 S.E. 2d 687 (1971). Liability may also be imposed upon a manufacturer who sells a product that is inherently dangerous. *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21 (1960); *Lemon v. Lumber Co.,* 251 N.C. 675, 111 S.E. 2d 868 (1960); *Davis v. Siloo Inc.,* 47 N.C. App. 237, 267 S.E. 2d 354, *disc. review denied,* 301 N.C. 234, 283 S.E. 2d 131 (1980). We conclude that the plaintiff's evidence herein failed to show any breach of the standard of care.

a)  Restricted Visibility

[2]  Plaintiff first alleges negligence in the restricted visibility afforded the operator by the design of the crane. Initially, we note that the evidence tended to show that some restricted visibility is inevitable. Cagle testified: "All cranes have a visibility problem." The plaintiff's expert witness, Phillip Bisesi, testified that the operator's forward visibility could be improved by positioning the boom of the crane behind the operator, but that this would create a visibility problem to the rear. Assuming, *arguendo,* that the positioning of the boom of the crane herein may be held a defect, plaintiff's evidence tended to show that the resulting restricted visibility was a condition known to all people involved in the use of the crane. Plaintiff himself testified as follows:

To some point I knew that the crane had a blind spot. . . . Part of my job as hookup man was to know where the crane

was. . . . I guess you would say that it was part of my job to
stay out of the way of the crane if it was going to hurt me. I
knew there were times when the crane operator couldn't see
me but I could see the crane.

Although plaintiff testified that he did not know that he was in
the operator's blind spot at the time of the accident, the impor-
tant point is that he did know of the restricted visibility of the
crane operator. Thus, there is no evidence of a latent defect or of
a concealed or unknown danger in the design of the crane.

   b)   Lack of Warning Device

[3]   Plaintiff next alleges negligence in defendant's failure to
equip the crane with warning devices. He offered evidence that
the crane had no bells or lights to warn those nearby of its for-
ward movement. Bisesi testified that the crane operator's visibili-
ty could have been improved by placing a mirror on the front of
the crane.

   Under our case law, a manufacturer has no duty to equip his
product with safety devices to protect against defects and
dangers that are obvious. We examine the controlling cases. The
plaintiff in *Tyson v. Manufacturing Co.* was looping tobacco on a
tobacco harvester. The harvester lurched, and the plaintiff lost
her balance and caught her hand between a sprocket and con-
veyor chain. Plaintiff charged the manufacturer of the harvester
with negligence in that the sprockets were inadequately guarded.
Our Supreme Court affirmed a judgment of nonsuit in favor of
the manufacturer. It wrote:

   In cases dealing with a manufacturer's liability for in-
   juries to remote users, the courts have always stressed the
   duty of guarding against *hidden* defects and of giving notice
   of concealed dangers. [Citations omitted.] As was said in *Lane
   v. City of Lewiston,* 91 Me. 292, 39 A. 999, "no one needs
   notice of what he already knows."

   Plaintiff was experienced in looping tobacco on a tobacco
harvester, and had been working on the tobacco harvester on
which she was injured most of the summer in 1955, when
tobacco was being pulled. There is no evidence of negligence
in the design or construction of the machine. Entirely lacking
is the slightest evidence that the sprockets and conveyor

chain on the platform of the tobacco harvester had a latent defect or a danger concealed from plaintiff, or that they were in operation inherently dangerous to her.

249 N.C. at 561-62, 107 S.E. 2d at 173.

In *Kientz v. Carlton*, the plaintiff was injured when his foot went underneath a lawn mower and was struck by the rotating blade. He brought an action against Carlton, for whom he was working at the time, and Sears, Roebuck & Co., who had sold the mower to Carlton. He presented evidence that the mower was not equipped with certain safety features. Nonsuit was granted Sears, and our Supreme Court affirmed, noting in part: "The absence of the several alleged safety features was obvious, not latent." 245 N.C. at 241, 96 S.E. 2d at 18.

Both *Tyson* and *Kientz* cited with approval the New York case of *Campo v. Scofield*, 301 N.Y. 468, 95 N.E. 2d 802 (1950). *Campo*, however, was overruled by *Micallef v. Miehle Co.*, 39 N.Y. 2d 376, 384 N.Y.S. 2d 115, 348 N.E. 2d 571 (1976). Many other jurisdictions have also rejected the *Campo* "patent danger" rule. *See* Annot., 95 A.L.R. 3d 1066, § 3 (1979).

*Tyson* and *Kientz* remain the law in this jurisdiction. These cases squarely hold that a manufacturer has no duty to equip his product with safety devices to protect against defects and dangers that are obvious. Since *Tyson* and *Kientz* were decided in the 1950's and since the "patent danger" rule has been overruled in the jurisdiction (New York) in which it had its genesis, our courts and General Assembly may be

> persuaded by reasoning in cases from other jurisdictions to the effect that the law ought to discourage misdesign rather than to encourage it in its obvious form, and that it would be anomalous to hold that a manufacturer had a duty to install safety devices but that a breach of that duty results in no liability, if the danger is obvious, for the very injury the duty was meant to protect against.

95 A.L.R. 3d 1066, 1075.[1]

---

1. G.S. Chap. 99B, dealing with products liability, became effective October 1979 but does not specifically address the issue raised herein. Moreover, the statutes do not affect pending litigation, and this case was filed in September 1979.

---

**McCollum v. Grove Mfg. Co.**

---

Although the *Micallef* rationale—that the "patent danger" rule (1) encourages manufacturers to be "outrageous in their design," *id.* at 1074; and to eliminate safety devices when hazards are obvious; and (2) places the entire accidental loss on the person injured even though the manufacturer was partly at fault—is particularly compelling,[2] it does not help the plaintiff in this case. For even if we could say that defendant negligently failed to equip the crane with warning devices, plaintiff has nevertheless failed to show that such negligence proximately caused the injuries he sustained. The evidence points unerringly to the conclusion that the crane slipped off of the concrete pad, and that—not the lack of a warning device—caused the plaintiff's injuries.

   c)   Inherently Dangerous Instrumentality

[4]   Plaintiff has also alleged that the crane was inherently dangerous. We disagree. The crane was being used for its intended purpose at the time of the accident. Mattison operated the crane on a daily basis from April 1976 until the fall of 1980 without hitting anyone other than the plaintiff. Carolina Cast Stone began using the crane in the summer of 1975 and was still using it at the time of trial in March 1981. During that time the

---

2. It should be noted that the "patent danger" rule remains the law in several jurisdictions. *See generally,* Annot., 95 A.L.R. 3d 1066 §§ 4 and 5. For example, interpreting Georgia case law, the Fifth Circuit Court of Appeals wrote:

   Appellant argues that because the New York courts have overruled *Campo*, . . . we should find that *Campo's* rationale no longer stands as the law of Georgia. His reasoning, however, is faulty. Although Georgia courts have adopted *Campo's* holding, they are not controlled by the New York judiciary's subsequent decisions. We, on the other hand, in reviewing this diversity case, are absolutely bound by the decisions of the Georgia courts, one of which recently affirmed the *Campo* approach.

*Wansor v. George Hantscho Co., Inc.,* 595 F. 2d 218, 220, n.7 (5th Cir. 1979) (citations omitted).

   Similarly, in an action against the manufacturer of a crane to recover for injuries sustained when the crane came in contact with a power line, the Minnesota Supreme Court, in *Halvorson v. American Hoist and Derrick Co.,* 307 Minn. 48, 57, 240 N.W. 2d 303, 308 (1976), said:

   We hold that American Hoist did not owe this injured plaintiff any duty to install safety devices on its crane to guard against the risk of electrocution when the record demonstrated that risk was: (1) obvious; (2) known by all of the employees involved; and (3) specifically warned against in American Hoist's operations manual.

crane was involved in only one other accident, and that accident involved the boom hitting a power line. Cagle, who was responsible for supervising safety procedures for Carolina Cast Stone, testified, "[I]n my opinion, the Grove Manufacturing crane was not unusually dangerous for the purpose it was intended, but was only dangerous in the sense that all heavy equipment is dangerous."

We find no evidence that the crane was an inherently dangerous instrumentality. *See generally, Anderson v. Butler,* 284 N.C. 723, 202 S.E. 2d 585 (1974) (forklift held not inherently dangerous *per se*); *Tyson v. Manufacturing Co.* ("Entirely lacking is the slightest evidence that the sprockets and conveyor chain on the platform of the tobacco harvester . . . were in operation inherently dangerous to [plaintiff]." 249 N.C. at 562, 107 S.E. 2d at 173); *Kientz v. Carlton* (evidence held insufficient to show lawn mower inherently dangerous instrumentality).

(2)  The Strict Liability and Breach of Warranty Claims

Plaintiff also alleged claims based upon strict liability and breach of warranty in his Complaint. He does not argue in support of these theories on appeal, but we have considered them and find that the directed verdict was proper. In products liability cases, the duty of the manufacturer in tort must be determined by the principles of negligence. We have not adopted the doctrine of strict liability except for a few exceptional situations not applicable herein. *See Smith v. Fiber Controls Corp.,* 300 N.C. 669, 268 S.E. 2d 504 (1980); *Davis v. Siloo Inc., Fowler v. General Electric Co.,* 40 N.C. App. 301, 252 S.E. 2d 862 (1979). Plaintiff may not recover on a breach of warranty theory since he presented no evidence of an express warranty addressed to him and since he lacks the contractual privity necessary for an action based upon an implied warranty.[3] *See Davis v. Siloo Inc.; Fowler v. General Electric Co.*

The judgment below is

---

3. Again, because plaintiff filed this suit in September 1979, he cannot take advantage of the Products Liability Act, G.S. Chap. 99B, which became effective 1 October 1979.

Affirmed.

Judge HEDRICK and Judge HILL concur.