VICKIE ANN BUCHANAN CREWS AND DIANE NELSON BUCHANAN v. W. A. BROWN & SON, INC., FOODCRAFT EQUIPMENT COMPANY, AND CALVARY BAPTIST CHURCH OF WINSTON-SALEM, INC.

No. 9121SC532

(Filed 2 June 1992)

**1. Sales § 22 (NCI3d)— products liability—freezer door— negligence claim—summary judgment for seller—no error**

The trial court did not err by granting summary judgment for defendant Foodcraft where plaintiff Vickie Crews suffered severe frostbite injuries when she became trapped in a walk-in freezer while doing volunteer work at church and brought an action against the church, Foodcraft, which sold the freezer equipment to the church, and Brown, which sold the parts

CREWS v. W. A. BROWN & SON

[106 N.C. App. 324 (1992)]

for the freezer to Foodcraft. Foodcraft's evidence showed that it did not breach its duty of care in assembling and installing the freezer, in inspecting it for latent defects, and in failing to warn of the alleged latent defect.

Am Jur 2d, Products liability § 690.

Products liability: Industrial refrigeration equipment. 72 ALR4th 90.

Products liability: Household equipment relating to storage, preparation, cooling and disposal of food. 58 ALR4th 131.

2. **Sales § 17 (NCI3d) — products liability — freezer door — breach of warranties — summary judgment for seller — no error**
   The trial court did not err by granting summary judgment for defendant Foodcraft on breach of warranty claims where plaintiff Crews suffered severe frostbite injuries after being trapped in a walk-in freezer at church and brought an action against the church, Foodcraft, which sold the freezer equipment to the church, and Brown, which sold the equipment to Foodcraft. Foodcraft is the seller rather than the manufacturer under the Products Liability Act and is properly classified as the seller of the freezer under the Uniform Commercial Code. Assuming the existence of express and implied warranties, those warranties do not extend to plaintiffs because a church does not have a family or a household in the ordinary meanings of those terms and cannot be classified as a home. Furthermore, plaintiffs did not allege any facts indicating that they were third-party beneficiaries of Foodcraft's contract with the church, so that implied privity is not considered. N.C.G.S. § 25-2-318; N.C.G.S. § 99B-1 *et seq.*

Am Jur 2d, Products liability § 609.

Products liability: Industrial refrigeration equipment. 72 ALR4th 90.

APPEAL by plaintiffs from order entered 14 January 1991 in FORSYTH County Superior Court by *Judge Lester P. Martin, Jr.* Heard in the Court of Appeals 18 March 1992.

CREWS v. W. A. BROWN & SON

[106 N.C. App. 324 (1992)]

*The Law Office of Herman L. Stephens, by Herman L. Stephens and Howard C. Jones, II, for plaintiff-appellants.*

*Petree, Stockton & Robinson, by James H. Kelly, Jr. and Michael D. Hauser, for defendant-appellee Foodcraft Equipment Company.*

*Elrod & Lawing, P.A., by Frederick K. Sharpless and Pamela A. Robertson, for defendant-appellant W. A. Brown & Son, Inc.*

*Hutchins, Tyndall, Doughton & Moore, by H. Lee Davis, Jr. and Laurie L. Hutchins, for defendant-appellant Calvary Baptist Church of Winston-Salem, Inc.*

GREENE, Judge.

The plaintiffs appeal from an order entered 14 January 1991 allowing Foodcraft Equipment Company's (Foodcraft) motion for summary judgment.

In mid-1984, Foodcraft, a corporation, sold a walk-in freezer to Calvary Baptist Church (Church). Foodcraft was not in the business of manufacturing freezer equipment and did not manufacture the walk-in freezer that it sold to Church. In July, 1984, Foodcraft contracted with W. A. Brown & Son, Inc. (Brown) for the purchase of the parts needed to "field assemble" a walk-in freezer. Brown maintained its principal place of business in Rowan County, North Carolina. Brown shipped all the necessary parts to Foodcraft on 25 October 1984. Included in this shipment was a pre-assembled door. The inside of the door to the freezer contained a label stating:

YOU ARE NOT
LOCKED IN!

The manufacturer of this unit has equipped it with a STANDARD-KEIL EASY ACTION latch assembly. You cannot be locked in, even if the door closes behind you and the cylinder is locked. By pushing the inside release on the inside of this unit, you may operate the latch and open the door.

No Foodcraft employee removed this label from the door.

Installed in the door by Brown was a Standard-Keil door latch assembly with inside and outside releases. Foodcraft did not adjust this door latch assembly or alter it in any way. When Foodcraft received the freezer parts, Foodcraft employees took them to the

CREWS v. W. A. BROWN & SON

[106 N.C. App. 324 (1992)]

church, assembled the freezer, and tested it to be sure that it operated properly. After the Foodcraft employees assembled the freezer, they tested the door latch assembly to be sure that the freezer could be opened from the inside by pressing the red release button. They concluded that the door latch assembly worked properly, and according to Jack Kroustalis, an officer with Foodcraft, "[a]t the time we received and hung the door, there was no indication that the Standard-Keil easy action latch assembly of the door to the walk-in freezer was defective or that the seal and/or door latch assembly in the door of the walk-in freezer was improperly installed in any fashion." Furthermore, Harry Gallins, vice-president of Foodcraft, installed a "heated pressure release port" in the freezer to prevent a vacuum from being created inside the freezer whenever the door is closed.

Vickie Ann Buchanan Crews (Crews), a thirteen-year-old member of Church, was working at the church on the evening of 2 July 1985 as a volunteer managing the registration desk to the Family Life Center at the church. As a registration desk volunteer, Crews signed people in and out of the church gymnasium, signed equipment in and out to those people using the gym, and answered the telephone. At approximately 8:45 p.m., Crews went into the church's kitchen to get some ice for a soft drink. She was wearing shorts and a shirt, but no shoes. Once inside the kitchen, Crews heard a noise which she thought came from the walk-in freezer. She went to the freezer, opened the door, and stepped inside. When she did, the freezer door closed behind her. She pushed on the red release button on the inside of the door, but the door would not open. She continued to try to open the door, but she could not open it. She banged on the door with her hands and feet, she pushed on the door with her shoulder, and she screamed. After about an hour of unsuccessful attempts, Crews became tired and sat down on a small rack. She had lost all feeling in her feet which were now completely white. Despite being tired, she continued to kick the door. At approximately 10:00 p.m., someone discovered Crews in the freezer. By that time, however, she had suffered severe frostbite to her feet, legs, and buttocks. Paramedics took her to a nearby hospital where she remained for approximately two months and where she underwent approximately five separate operations. During the first operation, doctors removed nine and one-half of her toes. During the remaining operations, doctors performed, among other things, skin grafts.

Crews later recalled noticing a thick, white substance resembling frost on the inside of the release button. According to the plaintiffs' expert, Crews was unable to open the door from the inside because frost had accumulated inside the release mechanism. The expert opined that the frost had accumulated inside the release mechanism through the seal that separates the plastic cover of the latch assembly from the metal of the freezer door "and that this was caused by improper installation of the seal and/or latch assembly in the door of the walk-in freezer."

Crews and her mother filed a complaint against Brown, Foodcraft, and Church. Crews sought recovery for, among other things, the loss of her toes and her pain and suffering, and her mother sought recovery for Crews' medical expenses. With regard to Foodcraft, the plaintiffs alleged that Foodcraft was negligent in failing to assemble, install, and inspect the freezer properly and in failing to provide adequate warnings on the freezer. The plaintiffs also alleged breach of warranty claims against Foodcraft including breach of express warranties and breach of the implied warranties of merchantability and fitness for a particular purpose. Brown, Foodcraft, and Church made motions for summary judgment. The trial court granted Foodcraft's motion, but denied Brown's and Church's motions. The plaintiffs appealed the trial court's grant of Foodcraft's motion for summary judgment, and Brown and Church appealed the denial of their motions for summary judgment. On 25 July 1991, the plaintiffs moved to dismiss Brown's and Church's appeals on the grounds that the orders from which they were appealing are interlocutory and do not affect substantial rights. On 19 August 1991, this Court dismissed Brown's and Church's appeals and denied Church's petition for writ of certiorari.

---

The issues are whether (I) there is a genuine issue of material fact as to whether Foodcraft assembled and installed the freezer with reasonable care and inspected it for latent defects with reasonable care; and (II) Foodcraft's alleged express and implied warranties extend to members of Church who suffer personal injury while on church property.

The plaintiffs' action against Foodcraft is a products liability action as it has been "brought for or on account of personal injury . . . [allegedly] caused by or resulting from the" assembly, instructing, labeling, selling, testing, or warning of a product, namely,

a walk-in freezer. N.C.G.S. § 99B-1(3) (1989). The plaintiffs' products liability action is based on two separate theories, negligence and breach of warranties. *See Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498 (1987) (action for breach of implied warranty of merchantability is products liability action where action is for injury to person resulting from sale of product); *Wilson Bros. v. Mobil Oil*, 63 N.C. App. 334, 341, 305 S.E.2d 40, 45, *disc. rev. denied*, 309 N.C. 634, 308 S.E.2d 718 (1983) (products liability actions determined by principles of negligence and breach of warranty); C. Daye & M. Morris, North Carolina Law of Torts §§ 26.10, 26.30 (1991) (because Products Liability Act not source of liability, liability determined by rules of negligence, breach of warranty, or other theory of recovery).

## I

## Negligence Claims

[1] The plaintiffs argue that the trial court erred in granting Foodcraft's summary judgment motion on their negligence claims of failure to assemble, install, and inspect the freezer properly and of failure to provide adequate warnings on the freezer. We disagree.

As with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *McCollum v. Grove Mfg. Co.*, 58 N.C. App. 283, 286, 293 S.E.2d 632, 635 (1982), *aff'd per curiam*, 307 N.C. 695, 300 S.E.2d 374 (1983). In North Carolina, where the seller of a product made by a reputable manufacturer "acts as a mere conduit and has no knowledge or reason to know of a product's dangerous propensities, [the seller] 'is under no affirmative duty to inspect or test for a latent defect, and therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it.'" *Sutton v. Major Prods. Co.*, 91 N.C. App. 610, 614, 372 S.E.2d 897, 900 (1988) (citation omitted). Because the alleged defect in the latch assembly of the freezer door is hidden and not apparent, the alleged defect is properly classified as a latent one. Black's Law Dictionary 883 (6th ed. 1990); *see Sutton*, 91 N.C. App. at 614, 372 S.E.2d at 899 (because product not patently dangerous or defective, alleged defect characterized as latent). Where as here, however, the seller assembles and installs the product thereby acting as more than a "mere conduit," the seller has the duty to exercise reasonable care in assem-

bling and installing the product and in inspecting the product for latent defects "and may be liable for a failure to exercise reasonable care not only in installation but also to discover defects." 2 L. Frumer & M. Friedman, Products Liability § 6.03[4] (1992); *Davis v. Siloo Inc.*, 47 N.C. App. 237, 247, 267 S.E.2d 354, 360, *disc. rev. denied*, 301 N.C. 234, 283 S.E.2d 131 (1980) (seller not mere conduit where seller performs auxiliary functions in connection with sale such as installation). Furthermore, the non-manufacturing seller has the duty to warn of hazards attendant to the assembled and installed product's use but only when the seller "has actual or constructive knowledge of a particular threatening characteristic of the product" and simultaneously "has reason to know that the purchaser will not realize the product's menacing propensities for himself." *Ziglar v. E. I. Du Pont De Nemours & Co.*, 53 N.C. App. 147, 151, 280 S.E.2d 510, 513, *disc. rev. denied*, 304 N.C. 393, 285 S.E.2d 838 (1981).

At the summary judgment hearing, Foodcraft's evidence showed that it did not breach its duty of care in assembling and installing the freezer, in inspecting it for latent defects, and in failing to warn of the alleged latent defect. According to this evidence, Foodcraft employees assembled and installed the various pre-assembled parts of the freezer, including the freezer door in which the manufacturer had previously installed the Standard-Keil door latch assembly. Once constructed, the employees inspected the freezer to be sure that it operated properly. Furthermore, they inspected the door latch assembly and concluded that it worked properly. In fact, nothing in their inspection indicated that the door latch assembly was defective or had been improperly installed. With this evidence, Foodcraft showed that an essential element of the plaintiffs' claims did not exist. *See Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37, *disc. rev. denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). Foodcraft's showing shifted the burden to the plaintiffs to show that Foodcraft had breached its duty of care. *White v. Hunsinger*, 88 N.C. App. 382, 383, 363 S.E.2d 203, 204 (1988). The plaintiffs presented evidence at the hearing, but their evidence did not rebut Foodcraft's showing. Accordingly, the trial court properly entered summary judgment for Foodcraft on the plaintiffs' negligence claims. *Id.*

CREWS v. W. A. BROWN & SON

[106 N.C. App. 324 (1992)]

## II

## Breach of Warranties Claims

[2]  The plaintiffs argue that the trial court erred in granting Foodcraft's summary judgment motion on their breach of express and implied warranties claims. Foodcraft argues that the trial court properly granted its motion because the plaintiffs' claims are barred by a lack of privity with Foodcraft.

Except where the barrier of privity has been legislatively or judicially removed, the absence of a contractual relationship between the seller or manufacturer of an allegedly defective product and the person injured by it continues to preclude products liability actions for breach of express and implied warranties. *See* N.C.G.S. § 25-2-318 (1986) North Carolina comment; Daye & Morris, *supra*, § 26.33; *cf. Gregory v. Atrium Door & Window Co.*, 106 N.C. App. 142, 144, 415 S.E.2d 574, 575 (1992) (privity required to assert breach of implied warranty claim involving economic loss). To determine whether the barrier has been removed, a court must examine the basis for the breach of warranty action and determine whether the defendant in the action is the seller or the manufacturer.

## Claims Against Manufacturers

"Where the cause of action is based on breach of *express* warranty, directed by the *manufacturer* to the *ultimate purchaser*, lack of privity between the plaintiff-purchaser and the defendant-manufacturer is not a bar." Daye & Morris, *supra*, § 26.33 (emphases added); *Kinlaw v. Long Mfg.*, 298 N.C. 494, 499-500, 259 S.E.2d 552, 556-57 (1979). This rule applies when the express warranty addressed to the ultimate consumer is written as well as when the manufacturer makes oral representations to a retailer which "are intended to be communicated to remote buyers to induce them to buy a product." *Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 737, 407 S.E.2d 819, 825 (1991). Furthermore, by statute, not only may the *ultimate purchaser* sue the manufacturer for breach of express warranty, but "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty" may sue the manufacturer for breach of its express warranty. N.C.G.S. § 25-2-318; *Bernick v. Jurden*, 306 N.C. 435, 448, 293 S.E.2d 405, 413-14 (1982) (where mother

purchased and her son used an allegedly defective product, son allowed to sue manufacturer for breach of express warranty).

Where the cause of action against the *manufacturer* is based on breach of *implied* warranty, the Products Liability Act (Act) eliminates the privity requirement where the claimant "is a buyer, as defined in the Uniform Commercial Code, of the product involved, or . . . is a member or a guest of a member of the family of the buyer, a guest of the buyer, or an employee of the buyer . . . ." N.C.G.S. § 99B-2(b) (1989); *Bernick*, 306 N.C. at 448-49, 293 S.E.2d at 414 (son of purchaser allowed to sue manufacturer for breach of implied warranty); *see Tedder v. Pepsi-Cola Bottling Co.*, 270 N.C. 301, 304-06, 154 S.E.2d 337, 339-40 (1967) (in pre-Act case, buyer of product intended for human consumption allowed to sue manufacturer for breach of implied warranty despite the absence of privity); *see also Kinlaw*, 298 N.C. at 499, 259 S.E.2d at 556 (discussing *Tedder*); C. Cain & J. Murray, Survey of Developments in North Carolina Law, 1979, *Commercial Law*, 58 N.C. L. Rev. 1290, 1313 (1980).

## Claims Against Sellers

Where, however, the products liability action is brought against the *seller* for breach of either *express* or *implied* warranty, the privity barrier has been removed legislatively to the same extent as it has been removed in actions against manufacturers for breach of express warranty. N.C.G.S. § 25-2-318. Accordingly, assuming the existence of express and implied warranties, N.C.G.S. § 25-2-318 extends those warranties beyond the buyer but *only* to natural persons suffering personal injury who are in the buyer's family or household or who are guests in the buyer's home and only if it is reasonable to expect such persons may use, consume, or be affected by the goods. *Id.*; 3 R. Anderson, Anderson on the Uniform Commercial Code § 2-318:21 (3d ed. 1983); J. White & R. Summers, Uniform Commercial Code § 11-3 (3d ed. 1988). The statute does not extend warranty coverage to persons beyond those specifically enumerated. This construction is consistent with the legislative intent behind N.C.G.S. § 25-2-318 which was to eliminate the doctrine of privity as to the buyer's family, household, and guests, but not to abolish the doctrine as it relates to strangers to the contract. N.C.G.S. ch. 25, art. 2 North Carolina comment; N.C.G.S. § 25-2-318 North Carolina comment. Furthermore, this Court has applied N.C.G.S. § 25-2-318 consistently with this legislative

CREWS v. W. A. BROWN & SON

[106 N.C. App. 324 (1992)]

intent. This Court has previously held that because N.C.G.S. § 25-2-318 "specifically limits actions on warranties, either express or implied," an employee of a buyer of a dangerous chemical was barred by a lack of privity from suing the seller for breach of implied warranty. *Davis*, 47 N.C. App. at 248-49, 267 S.E.2d at 361.

The plaintiffs have brought against Foodcraft claims for breach of express and implied warranties. Because the plaintiffs do not contend either that Foodcraft was owned in whole or significant part by Brown or that it owned Brown in whole or significant part, and because Foodcraft assembled the freezer *after* it had sold it to Church, Foodcraft is not the manufacturer of the freezer under the Act but rather the seller. *See* N.C.G.S. § 99B-1(2) (1989) (manufacturer means entity assembling product prior to sale and includes "a seller owned in whole or significant part by the manufacturer" and "a seller owning the manufacturer in whole or significant part"); N.C.G.S. § 99B-1(4) (1989) (seller means entity engaged in business of selling a product). Furthermore, Foodcraft is properly classified as the seller of the freezer under the Uniform Commercial Code as enacted in North Carolina as Chapter 25 defines "seller" to include corporations which sell goods. N.C.G.S. § 25-1-201(28), (30) (1986); N.C.G.S. § 25-2-103(1)(d) (1986). Neither party disputes that Foodcraft, as a merchant, sold goods to Church. *See* 3 Anderson, *supra*, §§ 2-314:9, 2-315:11 (discussing predominant element test).

Assuming the existence of express and implied warranties, however, those warranties do not extend to the plaintiffs. Because a church does not have a "family" or a "household" in the ordinary meanings of those terms, Crews cannot be classified as a member of Church's "family" or "household" under N.C.G.S. § 25-2-318. *See State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984) (where words in statute do not have technical meaning, court must construe them according to their common and ordinary meaning); *Lafayette Transp. Serv., Inc. v. County of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973) (presume that legislature intended words of statute to be given ordinary meaning). Because a church is not a "home" within the ordinary meaning of that term, Church cannot be classified as a "home." Accordingly, because Crews was not in the buyer's "family" or "household," and because she was not a guest in the buyer's "home," N.C.G.S. § 25-2-318 does not extend the coverage of Foodcraft's warranties to the plaintiffs. *See Williams v. General Motors Corp.*, 19 N.C. App. 337, 339-40, 198 S.E.2d 766, 767-68, *cert. denied*, 284 N.C. 258, 200 S.E.2d 659

(1973) (borrower of car not member of buyer's family or household and not guest in buyer's home).

Furthermore, because the plaintiffs did not allege in their complaint any facts indicating that they were third-party beneficiaries of Foodcraft's contract with Church, we will not consider whether to imply privity in this case. *See Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 236, 405 S.E.2d 208, 212 (1991) (privity implied as to third-party beneficiaries); *Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C. App. 59, 63-64, 401 S.E.2d 126, 128-29, *aff'd per curiam*, 330 N.C. 439, 410 S.E.2d 392 (1991) (pleading must allege sufficient facts to support required elements of third-party beneficiary claim). Accordingly, because N.C.G.S. § 25-2-318 does not extend the coverage of Foodcraft's warranties to the plaintiffs, the trial court's order allowing Foodcraft's summary judgment motion is

Affirmed.

Judges JOHNSON and COZORT concur.