TRAVELERS INSURANCE COMPANY (THE TRAVELERS) INC., a Member of the Travelers Companies, a Corporation, Subrogee of Wachovia Bank & Trust Co., N.A., a North Carolina Banking Corporation, and Crown Automobile Co. d/b/a Crown Pontiac, a North Carolina Corporation, and Carmelo Cambareri, Plaintiffs,

v.

CHRYSLER CORPORATION, a Corporation; Chrysler Motor Car Division, a Division of Chrysler Corporation; Chrysler Corporation of Canada; Enterprise Industries Inc., a Corporation d/b/a Enterprise Mobile Vehicle Systems, Inc.; Enterprise Motor Corporation, a Corporation, Defendants.

No. 2:91CV00477.

United States District Court, M.D. North Carolina, Greensboro Division.

March 4, 1994.

*MEMORANDUM OPINION AND ORDER*

HIRAM H. WARD, Senior District Judge.

This matter comes before the Court on the defendants' separate Motions for Summary Judgment. For the reasons states herein, Enterprise Industries' motion will be granted with respect to all claims and Chrysler Corporation's motion will be partially granted.

## I. PROCEDURAL BACKGROUND

This is a diversity action arising out of the purchase of a mobile food service vehicle ("the vehicle") by plaintiff Crown Automobile Company ("Crown") to be leased to plaintiff Carmelo Cambareri ("Cambareri"). The vehicle was destroyed by fire on August 27, 1988.

Defendant Enterprise Motor Corporation ("Motor Corp.") assembled the vehicle. This Court previously dismissed the action against Enterprise Motor Corporation for insufficient service of process. See Memorandum Opinion and Order of June 17, 1992.

Defendant Enterprise Industries, Inc. ("Industries") was the distributor of the vehicle. Defendant Chrysler Corporation ("Chrysler") supplied parts to Motor Corp. to be assembled into the vehicle.

## II. FACTS

Motor Corp. was formed to manufacture mobile food service vehicles. These vehicles are essentially a rolling kitchen and are unique because they use propane both as combustion fuel for the engine and as fuel for the warmers and cookers in the kitchen area of the vehicle. Motor Corp. purchased certain component parts from Chrysler and installed them in the mobile food service vehicles. Some of the parts supplied by Chrysler were rubber hoses to be used for propane applications.

After being assembled, the vehicles were sold to Industries for resale to consumers. The vehicle in this action was manufactured by Motor Corp. and sold to Industries. Industries then resold the vehicle to Crown on or about November 24, 1986. Cambareri leased the vehicle from Crown after obtaining financing from Wachovia Bank. While

Richard Warren of the firm Warren & White, Greensboro, NC, for plaintiffs.

Joseph Yates and Andrew Vanore of the firm Yates, McLamb & Weyher, Raleigh, NC, for defendants.

operating the vehicle on August 27, 1988, Cambareri noticed that it had overheated. He pulled to the side of the road and shortly thereafter a fire destroyed the vehicle.

Cambareri filed this action against Chrysler, Motor Corp. and Industries alleging claims for product liability, breach of implied warranties and negligence. As noted earlier, the action against Motor Corp. was previously dismissed. Chrysler and Industries have filed separate motions for summary judgment. Each motion will be discussed independently.

## III. DISCUSSION

### A. Industries' Motion for Summary Judgment

Plaintiffs have stated several claims against Industries. However, the claims are essentially of two varieties. The first variety of claim is for negligence and breach of implied warranties. The second variety of claim is for strict liability. These claims will be discussed separately.

### 1. Negligence and Breach of Implied Warranties of Merchantability and Fitness for a Particular purpose.

■ Plaintiffs initially claim that Industries was negligent and breached the implied warranties of merchantability and fitness for a particular purpose. Specifically, plaintiffs claim that Industries 1) negligently designed the propane lines and connections, 2) negligently failed to warn Cambareri, 3) negligently advertised, 4) negligently used unsafe parts, 5) negligently used uninsulated propane lines, 6) negligently used an unvented engine cover, 7) negligently designed the vehicle and 8) negligently inspected the vehicle.

Industries claims that it acted as a mere conduit and therefore is not liable pursuant to N.C.G.S. § 99B. The briefs of all parties make it clear that Industries merely sold the vehicle and had nothing to do with the manufacturing process. Since Industries was not involved in the design or manufacture of the vehicle, Industries cannot be liable for the design of the vehicle or the use of defective components. Therefore, Industries motion for summary judgment will be granted with

respect to claims related to the manufacture or design of the vehicle.

■ The remainder of plaintiffs' claims are product liability actions as defined under N.C.G.S. § 99B–1(3) and are subject to the various defenses provided by N.C.G.S. § 99B. The statutory defense relied upon by Industries is that:

"No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of"

N.C.G.S. § 99B–2(a). N.C.G.S. § 99B provides protection for merchants who merely sell products while allowing the purchaser of the product to proceed against the manufacturer of the product. Plaintiffs initially included Motor Corp., the manufacturer of the vehicle, in this action. However, due to plaintiffs' failure to properly serve Motor Corp. with process, Motor Corp. was dismissed from this action.

Industries does not claim that the vehicle in question was acquired and sold in a sealed container. However, Industries does contend that the vehicle was sold under circumstances such that Industries was not afforded a reasonable opportunity to inspect the vehicle in a manner that would have revealed the existence of the condition of complained of.

Plaintiffs' expert contends that the fire was a result of either faulty propane lines or faulty propane line connections. However, plaintiffs present no evidence to demonstrate that Industries knew about either the faulty propane lines or the faulty propane line connections. Plaintiffs also fail to present any evidence to indicate that Industries could have discovered the faulty propane lines or connections through a reasonable inspection.

The defenses established in N.C.G.S. § 99B–2(a) were intended to limit the liabili-

ty of merchants who merely sell products without any knowledge of any defect in the product. This is exactly the present situation. Plaintiffs allege that Industries sold a product that was unmerchantable and not fit for a particular purpose and that Industries was negligent by selling this product. These claims amount to claims for breaches of implied warranties. North Carolina courts have held that N.C.G.S. § 99B defenses are available as a defense to actions for breaches of implied warranties. *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 354 S.E.2d 495 (1987).

Plaintiffs failed to present any evidence to indicate that Industries knew about the allegedly faulty propane lines or connections. Plaintiffs also failed to present any evidence that Industries had the ability to discover the allegedly faulty lines or connections through a reasonable inspection. Therefore, the 99B defenses protect Industries from any liability towards plaintiffs. Accordingly, Industries' motion for summary judgement with respect to the claims for negligence and breach of implied warranties are granted.

## 2. Strict Liability

■ Plaintiffs further contend that the propane powered vehicle was a dangerous instrumentality and as such Industries should be liable under a strict liability theory. North Carolina has classified activities into three categories: ultrahazardous activities, inherently dangerous activities and activities that are neither. *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991).

■ Strict liability is imposed for ultrahazardous activities since "reasonable care cannot eliminate the risk of serious harm." *Woodson* at 350, 407 S.E.2d at 234. The criteria for classifying an activity as being ultrahazardous is whether reasonable care can eliminate the risk of serious harm. The only activity that has satisfied this criteria and been classified as being ultrahazardous in North Carolina is the activity of blasting. *Id.* North Carolina courts have not extended the category of activities that fall under the classification of ultrahazardous activities beyond blasting.

Propane fuel is commonly used in many commercial products and through reasonable care there is a low risk of serious harm. Because reasonable care will eliminate the risk of serious harm, a product using propane fuel is not classified as ultrahazardous. Since the product itself is not ultrahazardous, the act of selling a non-ultrahazardous propane powered vehicle will not be classified as an ultrahazardous activity. Accordingly, the actions of Industries were not ultrahazardous and strict liability will not be applied.

■ North Carolina's second category is for inherently dangerous activities for which "proper safety procedures can substantially eliminate the danger." *Id.* Proper safety procedures can substantially eliminate the dangers associated with propane fuel, therefore propane fuel systems will be classified as inherently dangerous. Liability for injuries caused by an inherently dangerous activity is not strict but is based on negligence. *Id.* Thus, plaintiffs' claim for strict liability due to a dangerous instrumentality is not the law in North Carolina. Plaintiffs are relegated back to their initial negligence claim which has previously been addressed and dismissed against Industries. Therefore, Industries' motion for summary judgment will be granted for all claims.

## B. Chrysler's Motion for Summary Judgment

Chrysler's motions are similar to those made by Industries and will likewise be addressed separately.

### 1. Negligence and Breach of Implied Warranties of Merchantability and fitness for a Particular Purpose.

■ Plaintiffs also allege that Chrysler was negligent and breached the implied warranties with respect to the design of the vehicle and the design and sale of the particular components used on the vehicle. Chrysler responds by producing evidence that they did not participate in the design of the vehicle nor did they warrant the manufacture of the vehicle.

■ In North Carolina, the elements needed to establish a claim for product liability based on negligence are: "(1) evidence of a standard of care owed by the reasonably

prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury." *McCollum v. Grove Mfg. Co.*, 58 N.C.App. 283, 286, 293 S.E.2d 632, 635 (1982), *aff'd*, 307 N.C. 695, 300 S.E.2d 374 (1983). Plaintiffs' failure to allege or establish any one of these elements will be fatal to a product liability claim.

Chrysler contends, and plaintiffs have failed to provide any evidence to contradict, that Chrysler only provided certain component parts to Motor Corp. and it was Motor Corp. that designed and manufactured the vehicle. Chrysler denies providing any design input to Motor Corp. and plaintiffs failed to produce any evidence refuting Chrysler's denial. Chrysler goes on to argue that a component part supplier does not have a duty to provide design input to a manufacturer. Chrysler cites *Childress v. Gresen Mfg. Co.*, 888 F.2d 45 (6th Cir.1989) for the proposition that "a component part supplier has no duty, independent of the completed product manufacturer, to analyze the design of the completed product which incorporates its nondefective component part." *Childress* at 49.

There is no North Carolina or Fourth Circuit case on point, but the *Childress* court's reasoning is persuasive. In *Childress*, a valve manufacturer provided a valve made to the specifications of a log splitting company. The valve was not defective, but when incorporated into the log splitter, the log splitter became unreasonably dangerous. The *Childress* court held that the component part manufacturer had no duty to analyze the design of the completed product and stated that "extending the duty to make a product safe to the manufacturer of a nondefective component part would be tantamount to charging a component part manufacturer with knowledge that is superior to that of the completed product manufacturer." *Childress* at 49.

■ Applying the reasoning used by the *Childress* court, Chrysler had no duty to analyze the completed design of the vehicle even though Chrysler knew that the vehicle was to be fueled by propane. Since Chrysler owed no duty to the vehicle manufacturer to oversee the design, Chrysler cannot be liable for negligent design or manufacture of the vehicle. The only action for which Chrysler could be held accountable is if the condition of the components supplied to the manufacturer were defective.

Plaintiffs do allege that Chrysler was negligent in supplying allegedly defective propane fuel lines to the manufacturer of the vehicle. Plaintiffs provide the testimony of an expert to support the contention that the propane fuel lines were improperly manufactured and the fire resulted from these same fuel lines. Chrysler disputes plaintiffs' expert and contends that plaintiffs' expert can not definitively state that the fire was caused by a defective propane fuel line. This is matter of credibility and as such creates a dispute of fact. Any dispute of fact is a matter for the jury. For the purposes of this action, the facts must be taken in a light most favorable to the plaintiffs. Since the testimony of plaintiffs' expert indicates that the fire was caused by defective fuel lines, this is sufficient to defeat Chrysler's motion for summary judgment.

■ Chrysler next contends that plaintiffs have no claim since there was no privity with plaintiffs and thus Chrysler owed plaintiffs no duty. However, N.C.G.S. § 99B–2(b) allows a buyer to bring a product liability action against a manufacturer of a product regardless of the lack of privity of contract. N.C.G.S. § 99B–1(2) defines a manufacturer as an entity who "designs, assembles, fabricates, produces, constructs or otherwise prepares a product or *component part* of a product prior to its sale to a user or consumer". (emphasis added). Since Chrysler provided the propane fuel line to the manufacturer of the vehicle, Chrysler falls under the North Carolina definition of a manufacturer and plaintiff may bring a product liability action, with respect to the propane line, even without privity.

Plaintiffs have not presented any evidence that Chrysler either manufactured the vehicle or provided any design input into the vehicle. Therefore, plaintiffs are unable to support the claims for negligent design or manufacture of the vehicle and Chrysler's motion for summary judgment will be granted with respect to these claims. Plaintiffs have presented evidence to support the allegation that the propane lines supplied by Chrysler were defective. Therefore, Chrys-

ler's motion for summary judgment will be denied with respect to the product liability claim relating to the propane lines.

## 2. Strict Liability

As discussed above, North Carolina has only applied strict liability to ultrahazardous activities and equipment using propane fuel is not ultrahazardous. Since plaintiffs failed to allege any ultrahazardous activity on the part of Chrysler, strict liability is not available. Therefore, Chrysler's motion for summary judgment with respect to the strict liability claim will be granted.

**IT IS, THEREFORE, ORDERED** that defendant Enterprise Industries Inc.'s motion for summary judgment be, and the same hereby is, **GRANTED** and all claims against it are **DISMISSED.**

**IT IS FURTHER ORDERED** that the defendant Chrysler's motion for summary judgment be, and the same hereby is, **GRANTED** with respect to all claims except as relate to the manufacture of the propane fuel lines.